## Winston's Administrator v. Spinks.

(Decided March 2, 1915.)

### Appeal from Campbell Circuit Court.

1. Witnesses—Competency—Testifying Against Person Deceased— Principal and Agent.—Section 606, of the Code, excludes testimony of self interest when given against one who is dead, but an agent may testify for his principal as to transactions had by him as such agent with a person who is dead at the time he offers to testify.

2. Evidence—Parol Evidence Affecting Writings—Promissory Notes. —While parol evidence is not admissible to vary or contradict a written assignment of a promissory note, where no fraud or mistake is alleged, it is competent to show the purpose for which the endorsement was made and the note held.

OTTO WOLFF for appellant.

L. J. CRAWFORD for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

In 1907 Marshall Sedden and wife executed a note for $750 to their aunt, Mrs. Rebecca Spinks, and to secure its payment gave a mortgage on certain real estate in the city of Newport. Mrs. Spinks was, or became, indebted to her nephew, Harry C. Spinks, the appellee, and to satisfy that indebtedness executed a deed transferring to him two pieces of real estate in Covington, and also her interest in the Sedden note, above referred to. The deed showed that she had theretofore assigned and transferred the note to Thomas Winston, since deceased, as collateral security for a $500 loan which Winston had made to her stepson, T. W. Spinks. It thus appeared that the interest which she assigned was the excess of the Sedden note above such amount as might be necessary to pay the debt of the stepson, T. W. Spinks.

Harry Spinks brought this action against the Seddens to enforce the mortgage. It was alleged that the note had been assigned to Winston as collateral security for the payment of the T. W. Spinks debt, and that the appellant, Lewis J. Schnider, as the administrator of Winston, held the note. He was made a party with prayer that he be required to file the note and show the interest of the decedent therein, and that the land be sold and the surplus proceeds, after payment of the debt to Winston, be paid to appellee.

The administrator answered with a denial that the estate held the note as collateral security for any debt, or that the appellee had any interest in it by assignment or otherwise. The note was filed and the answer was made a cross-petition against the Seddens, with prayer for judgment and sale of the mortgaged property, and application of the proceeds to the payment of that note. The answer further alleged that Winston's estate was the sole owner of the note and entitled to all the proceeds, because, for a valuable consideration, Mrs. Spinks had theretofore assigned and delivered the note and mortgage to Winston.

In the transfer to Winston Mrs. Spinks merely wrote her name across the back of the note; that is, made a blank endorsement. On the mortgage she wrote and acknowledged before a notary the following endorsement:

"For value received, the within mortgage and the note for $750 secured thereby are hereby assigned, transferred and set over to Thomas H. Winston.

"Witness my hand this July 30th, 1910.
            "(Signed)    REBECCA M. SPINKS."

This endorsement was duly entered on the margin of the recorded mortgage in the county clerk's office.

On the issues thus joined the plaintiff testified, and introduced in his behalf his aunt, Mrs. Rebecca Spinks, and her stepson, T. W. Spinks. The defendant offered no evidence and submitted the case upon objections to the competency and relevancy of the testimony given on behalf of plaintiff, appellee.

The lower court adjudged a sale of the mortgaged property and directed that a sufficiency of the proceeds be paid to the administrator to satisfy the $500 debt, and interest, owing the estate by T. W. Spinks. The residue was adjudged to be paid to the appellee.

Appellant insists that the lower court erred, (1) in permitting oral testimony to be introduced to vary a written contract in the absence of an allegation of fraud or mistake, and (2) that such of the evidence as was pertinent or material to the issue was incompetent under Sec. 606 of the code, because it was the testimony of an interested person in his own behalf concerning verbal statements, or a transaction with one dead when the testimony was given.

The appellee testified to the facts shown in the deed which Mrs. Spinks made to him. That is, he said that the note was in the possession of the Winston estate and held as collateral security for a $500 loan made by Winston to T. W. Spinks—the excess was assigned to him, the appellee.

Mrs. Spinks testified that T. W. Spinks was conducting a business in Covington, and that she suggested that he use the note to borrow money from Winston to meet his pay roll. To quote from her evidence:

"I gave it to T. W. Spinks to get money from Thomas Winston and for Thomas Winston to hold as collateral. Tom wanted money and wanted me to let him have it to get money on from Tom Winston. In fact, I proposed it to him."

She didn't endorse the note at the time, but afterwards, as she testifies:

"I came over to Tom Winston's home one evening. He had had the note for some time then, and that was when I endorsed it."

T. W. Spinks corroborated the testimony of his stepmother, and further testified that he delivered the note to Thomas H. Winston as collateral for a loan of $500; that "he loaned me $500 and took the note as collateral security;" and that the loan was made on July 30th, 1910, and that no part of it had ever been paid.

As Winston was not a party to the transaction between the appellee and Mrs. Spinks, and the conversation between them was not in his presence, their testimony is incompetent. As between the stepson, T. W. Spinks, and Winston, it can hardly be said that he was testifying for himself. It was really an admission against self. We infer from the record that the administrator found no note or evidence of indebtedness against T. W. Spinks among the papers of the decedent. T. W. Spinks admitted that he did owe the estate $500.

Section 606 excludes testimony of self-interest when given against one who is dead. The most favorable light that can be put upon this testimony, from the standpoint of the appellant, is that T. W. Spinks acted as agent for his step-mother in placing the note in the hands of Winston. It has been frequently held that an agent may testify for his principal as to transactions had by him as such agent with a person who is dead. Cobb v. Wolfe, 96 Ky., 418, 16 R., 591, 29 S. W., 303; Fidelity Co. v.

Goff, 17 R., 214, 30 S. W., 626; Logan Co. v. Bank, 25 R., 1668, 78 S. W., 458; Paducah Cooperage Co. v. Paducah Co., 121 S. W., 986, 135 Ky. 53; Massie v. Pike Consol. Coal Co., 116 S. W., 276.

The testimony of appellee and Mrs. Spinks may be excluded, but as the evidence of T. W. Spinks was competent, and it showed that Winston only had a lien on the note—that is, he held it as collateral security—and there being no proof to the contrary, we are of opinion that the evidence supported the judgment.

But appellant argues that the evidence was not competent in the absence of an allegation of fraud or mistake, because it was oral testimony and introduced for the purpose of varying the terms of a written contract. As above stated, there is nothing more than a blank endorsement of the note. The endorsement on the mortgage recites nothing more than that it has been transferred, assigned and set over to Winston, but there is nothing in either endorsement in conflict with the proof that it was assigned, transferred and set over to Thomas H. Winston as collateral security. This testimony does not deny the assignment; it merely undertakes to explain the purpose of it. Under this form of assignment, and without fraud or mistake, Winston might have held it in escrow, or as collateral, or in trust for another, or as his own. In either case it would be competent to show by oral evidence for what purpose he held it. The fact that he rightfully possessed it did not render oral testimony incompetent to show the nature of his possession.

As is said in the case of Elliott v. Elliott's Administrator, 89 Ky., 278:

"The rule that parol evidence (without an allegation of fraud or mistake) is not admissible to contradict or vary a written instrument evidencing an agreement is subject to many exceptions, and many instances have been declared within the rule which clearly did not belong there. The rule properly applied was intended to reach cases where the parties purported in the writing itself to set forth their agreement, or where the undertaking is inferable from the terms used in the writing. It ought not to apply to mere legal presumption, which in effect add new terms to the contract, as expressed between the parties, and it has not been so applied in this suit."

The Elliott case was a suit upon a note which made no mention of interest. It was held proper to receive oral evidence to show that the parties agreed that the note should not bear interest even after maturity.

In Butler v. Suddeth, 6 T. B. Mon., 541, it was held that while an endorsement in blank implies an undertaking on the part of the endorser to pay in the event the maker does not, yet parol or extrinsic evidence is admissible to show that the assignment was without recourse.

In Emmons v. Overton, 18 B. Mon., 647, it was held that one who signs a promissory note, the body of which denotes that all who execute it do so as principal, may show by parol evidence that he signed as surety and the other parties to the note signed as principal.

The judgment of the lower court is, therefore, affirmed.