## Bradley et al. v. City of Harrodsburg.

March 3, 1939.

KENDRICK S. ALCORN, Judge.

R. W. KEENON and CHARLES MATHERLY for appellants.
C. E. RANKIN for appellee.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

In 1891 the Harrodsburg Water Company built a dam across Salt River near the Harrodsburg-Mackville Turnpike. It purchased certain land on either side of

the river above the pike to include the impounded stream. This property was taken over by the city of Harrodsburg, some thirty or more years ago, when it purchased the assets of the water company. In 1921, J. W. Purdom, and his wife, conveyed an additional strip of land to the city, on the western side of the river and along the strip theretofore conveyed to the water company. It is explained that this added strip was necessary because of the city's plan to raise and widen the dam, thus flooding more property upstream. This strip did not run for the entire length of the property owned by the city. Above the strip conveyed in 1921 the river makes a turn, apparently paralleling the southern line of the Purdom property.

In 1937 the city enclosed its property by a fence for the avowed purpose of preventing stock from using or polluting the water in proximity to the dam. Shortly thereafter, appellant, Newton Bradley, whose wife had inherited title to the Purdom tract, removed a portion of this fence in order, so he says, to let the cattle of his tenants reach the stream. This suit was filed by the city for the purpose of establishing the true division line, to enjoin further removal of the fencing, and to require appellants to replace the portion taken. In the trial court appellants undertook to establish title to the land down to the bank of Salt River. They were unsuccessful in this and, on this appeal, they assert that "the only question is whether or not the appellants acquired possession of the right to use the water by adverse possession." The record demonstrates the title of the city to the boundaries it claimed beyond any reasonable question and we will therefore confine our consideration to the prescriptive right asserted by appellants.

Conceding, arguendo, that the nature of the right claimed by appellants is such that it might ripen by prescription into an easement, the record before us establishes that any use made by appellants, or their predecessors in title, was not under a claim of right for fifteen years or was otherwise than with the permission of the Water Company and the city. It appears that many years ago there was a stone fence along the river bank for at least a portion of the distance through which appellants now claim a right of access to the river. It also appears that this fence practically disintegrated due to rises in the water and various other

causes with the result that, to all intents and purposes, the property was unenclosed woodland. The presumption of a grant does not, therefore, apply with the same strictness that it does where the land is enclosed. Stephens v. Hamblin, 195 Ky. 428, 242 S. W. 597, and cases there cited. If the land is waste or unenclosed land, the owner having no reason for keeping persons off, a normal inference would be that the user is permissive. The law does not require an owner to adopt a "dog in the manger" attitude in order to protect his title to this species of property. As said in Smith v. Oliver, 189 Ky. 214, page 220, 224 S. W. 683, 686:

> "The law pertaining to the acquisition of passways by a presumed grant, resulting as it does in the incumbrance of another's property, should not be extended so as to work that result through mere neighborly courtesies between adjacent landowners."

Appellants apparently do not now assert a right to cross that portion of the strip of land conveyed by Mr. Purdom to the city in 1921. However, their proof indicates that cattle wandered along and across this property in the same manner that it did upstream at the point where Bradley tore up the fence. There is no showing whatever that the use of the city's land was over any particular route, or at any particular place.

It appears affirmatively that the use by Mr. Purdom's cattle was entirely permissive and that, when objection was made to his hogs wallowing in the pool above the dam, he immediately removed them. Objection was made to this evidence on the ground that the superintendent of the water works could not thus testify concerning a transaction with a decedent under Section 606 of the Civil Code of Practice. It has been frequently held that an agent may testify for his principal concerning transactions had by him, as agent, with a person who is dead. Winston's Administrator v. Spinks, 163 Ky. 251, 173 S. W. 753; Cobb's Adm'r v. Wolfe, 96 Ky. 418, 29 S. W. 303, 16 Ky. Law Rep. 591.

We have no doubt concerning the propriety of the conclusion reached by the chancellor. Even if we doubted the correctness of his decision, it would nevertheless be our duty to sustain the judgment.

Judgment affirmed.