WALTHERS et al. v. TANNER.

No. 34097.   June 12, 1951.

*233 P. 2d 303.*

Hughes, Ogden & Ogden, Guymon, for plaintiffs in error.

Aaron Mesirow, Oklahoma City, and C. R. Board, Boise City, for defendant in error.

HALLEY, J. Elzy Tanner, the plaintiff in the court below, homesteaded the following described land:

The Southeast Quarter (SE/4) of the Northeast Quarter (NE/4) and the North Half (N/2) of the Southeast Quarter (SE/4) and the Southeast Quarter (SE/4) of the Southeast Quarter (SE/4) of Section Thirty-four (34), Township Six (6) North, Range One (1) East Cimarron Meridian, in Cimarron County, Oklahoma.

His patent to the land was issued on September 13, 1925, and filed for record on July 24, 1926. Defendant A. L. Walthers was the record owner of:

The Southwest Quarter (SW/4) of the Northeast Quarter (NE/4); the South Half (S/2) of the Northwest Quarter (NW/4); and all of the Southwest Quarter (SW/4) of Section 34; and the Northeast Quarter (NE/4) of the Southeast Quarter (SE/4) of Section 33, all in Township Six (6) North, Range One (1) East Cimarron Meridian, in Cimarron County, Oklahoma.

Walthers had owned this land since 1911 or 1912. The parties will be referred to by name, or as they appeared in the trial court.

In 1922, when he first settled on this land, Tanner built a fence on the west side of the NW/4 of the SE/4 of Sec. 34-6N-1E, and the location of this fence has brought about this lawsuit. The defendant Walthers owned the 40 acres immediately west of this 40 acres of Tanner's and also owned the 40 acres immediately north of it. The fence as originally built, and as it has continued to be at all times, was a wire fence, and it has been maintained by Tanner throughout the years; and Tanner, when he built the fence, thought he was building it upon his west boundary line, but through error he included a little over four acres of land belonging to the defendant Walthers. This land has been cultivated by the plaintiff from 1922 on, and for most years has been in alfalfa. The defendant Walthers was a nonresident, and his land was unfenced, but had been under lease most of the years since 1922.

The defendant Bob Moore was an associate of Walthers and was living on his land. The defendants had a survey made and were attempting to build a fence on what they claimed to be the correct boundary line. Tanner objected to this, claiming that the fence he erected was the proper boundary line between the lands of the parties. Tanner had also been using a road across the defendants' property to get into and out of his property, to and from the highway, for more than eighteen years.

The trial court entered judgment for the plaintiff, and held that the fence that was put up by Mr. Tanner in 1922 was the legal boundary line between his property and that of the defendant Walthers, and also that the road that plaintiff was using across the defendants' property had become a public road by virtue of use for more than fifteen years, and that the defendants would be restrained from interfering with plaintiff in occupying the property that he had under fence and using the road across the defendants' land.

There is no question in this case but that the plaintiff, Tanner, occupied the land of the defendant Walthers actually, openly, notoriously, exclusively, and hostilely for more than twenty-five years. It would have been perfectly apparent to anyone who had walked out on the land and looked at it that Tanner was occupying the premises which he had under fence. Under the rule of Johnson v. Whelan, 186 Okla. 511, 98 P. 2d 1103, Tanner was occupying this property under a claim of right. He built his fence where he thought the boundary was; occupied the property as his own; claimed it as his own; used it as his own; and held it out to the world as being his property. It is made clear in Johnson v. Whelan, supra, that the intent with which the adverse possessor occupies the property is immaterial if he occupies it actually, openly, notoriously, exclusively, and hostilely for fifteen years. When this is done, we do not think that it is necessary for the party in possession to make any claim to ownership of the land. See also Cox v. Sherman Hotel Company (Tex. Civ. App.) 47 S. W. 808. The action of the trial court in fixing the boundary between the land of the parties according to the fence erected by Tanner is affirmed.

Now as to the road, a different proposition arises. This land is located in the most thinly populated county in Oklahoma, and there are many large tracts of land in it that are unfenced, as well as many large ranches. We think that this case is controlled by our decision in Friend v. Holcombe, 196 Okla. 111, 162 P. 1008. There we said that the burden of proof is upon one claiming a prescriptive easement for road purposes over unenclosed pasture land to establish that the user was adverse, and such fact is not established by mere proof of user for the prescriptive period; and that a mere permissive use of a way over the land of another, however long indulged in, will not ripen into an easement. In that case a road had been used across land in Osage county, which is also a great grazing county, since 1885 without interruption. There was nothing in the record in that case which showed that the use of the road was anything else than permissive, and there is nothing in the record in this case to show that the use of the road. was anything else than permissive. We said in that case that where a claimant has shown an open, visible, continuous, and unmolested use of land for the period of time sufficient to acquire an easement by adverse user, the use will be presumed to be under a claim of right, and the owner of the servient estate, in order to avoid the acquisition of an easement by prescription, has the burden of rebutting this presumption by showing that the use was permissive. This rule, however, appears to be elastic, and the proof of adverse user, to create prescriptive right to a passway that traverses unenclosed lands must be much more convincing than the proof required to establish the same right when the passway traverses cleared or enclosed land. In the same opinion, Hester v. Sawyers, 41 N. M. 497, 71 P. 2d 646, was quoted with approval, wherein it was held that in a state where large bodies of privately owned land are open and unenclosed, it is a matter of common knowledge that the owners do not object to persons' passing over them for their accommodation and convenience, and many such roads are made and used by neighbors and others, and under such circum-

stances it would be against reason and justice to hold that a person so using a way over lands could acquire any permanent right unless his intention to do so was known to the owner, or so plainly apparent from acts that knowledge should be imputed to him. In 28 C.J.S., Easements, §18, subd. (i), page 672, there is a discussion of an easement through unenclosed lands. This language is used:

"Nevertheless, except in a few states, it is generally held that, in determining whether or not the right to a passway has been acquired by prescription, there is a marked distinction between the character of evidence required to establish the right to a passway through enclosed land and that necessary to establish a passway through unenclosed land; while in the former case the consent of the owner may be implied from the fact that he permits the use of the passway, without objection, for the prescriptive period, the mere use of a right of way through unenclosed lands, especially woodland, will not give a right of way by prescription, the view being taken that such user is deemed permissive and raises no presumption that the use is under a claim of right which must be established in some manner other than by mere user."

In Du Mez v. Dykstra, 257 Mich. 449, 241 N.W. 182, the court made this statement:

"This distinction is in recognition of the general custom of owners of wild lands to permit the public to pass over them without hindrance. . . . The tacit permission to use wild lands is a kindly act which the law does not penalize by permitting a beneficiary of the act to acquire a right in the other's land by way of legal presumption, but it requires that he bring home to the owner, by word or act, notice of a claim of right before he may obtain title by prescription."

The Supreme Court of Kentucky, in Bradley v. City of Harrodsburg, 277 Ky. 254, 126 S. W. 2d 141, made this statement:

"If the land is waste or unenclosed land, the owner having no reasons for keeping persons off, a normal infer-ence would be that the user is permissive."

In view of the foregoing and of our holding in Friend v. Holcombe, supra, we conclude that the action of the trial court in declaring the way across the defendants' land a public way should be reversed.

The judgment of the trial court fixing boundary lines of the property by the fence of Tanner is hereby affirmed. The judgment declaring the roadway a public highway is reversed, and the trial court is directed to enter an order restraining the plaintiff from crossing the property of defendants. It is further ordered that the costs in this case shall be borne equally by plaintiff and defendants.