251 S.W.2d 397 (1952)
BURNETT et ux.
v.
SLADEK et ux.
No. 28468.
St. Louis Court of Appeals, Missouri.
September 16, 1952.
Warren H. May, and F. D. Wilkins, Louisiana, for appellants.
No attorney for respondents.
HOLMAN, Special Judge.
Plaintiffs (appellants) instituted this action seeking to enjoin defendants (respondents) from interfering with their use of a private roadway across 20 acres of defendants' land. Plaintiffs claim a prescriptive right to the way. Defendants denied plaintiffs' claim and sought by way of affirmative relief to enjoin plaintiffs from trespassing on their land. The decree *398 of the chancellor denied plaintiffs the relief they sought and upon defendants' cross-bill plaintiffs were, "perpetually enjoined and restrained from entering upon the said lands of defendants." From this decree plaintiffs have appealed.
Since this case involves the determination of an issue concerning an easement, we deem it appropriate at the outset to consider the question of our jurisdiction. If, "the title to real estate" is involved, the exclusive appellate jurisdiction is in the Supreme Court by virtue of Article V, Section 3, Constitution, 1945, V.A.M.S.
Was a determination of the status of the road a matter directly in issue or merely collateral or incidental to the adjudication of injunctive relief? It seems well settled that if the pleadings do not seek the specific establishment of the easement or that the title to the roadway be determined or quieted, this court has jurisdiction. In such a situation the validity of plaintiffs' claim is the subject of inquiry in order to determine whether the injunctive relief prayed for should be granted. It is not a direct determination of title and would not vest appellate jurisdiction in the Supreme Court. Chapman v. Schearf, Mo. App., 220 S.W.2d 757; Smith v. Santarelli, 355 Mo. 1047, 199 S.W.2d 411; and Chapman v. Schearf, 360 Mo. 551, 229 S.W.2d 552.
In the case at bar an examination of the pleadings and of the decree will disclose that neither the plaintiffs or defendants sought or obtained anything other than injunctive relief. In the light of the cases heretofore cited it would therefore appear that the appeal is properly lodged in this court.
The plaintiffs are husband and wife, as are the defendants. Neither of the wives testified or were referred to in the testimony except in the proof of the title to the tracts of land in question. Therefore, in many instances hereafter plaintiff and defendant will be referred to in the singular and will be intended to mean the husband in each case.
Plaintiffs purchased their 40 acre tract in 1938. It was wild, rough land, covered with brush, sprouts and timber. It had never had any improvements thereon and was not suitable for cultivation or pasture land. Plaintiff testified that from the time he purchased the land until stopped by defendant in 1946 or 1947 his means of ingress and egress was over defendant's land which joined his on the west, thence across the land of one Green, and finally over the country club grounds to the highway. He obtained permission to cross the country club grounds from its president, with the stipulation that he not do so when the ground was wet. He strictly complied with this agreement and it necessarily follows that he always crossed defendant's land when the ground was dry. There was no fence between the land of plaintiffs and defendants. A "piece of fence" was in existence between defendant's tract and the Green land.
The chief value of plaintiff's land was for its timber. His use of the roadway in question was perhaps 10 or 12 times each fall in order to bring out the timber. Defendant's 20 acre tract was of the same general character of wild, rough land and was not used for either cultivation or pasture. The testimony of plaintiff would indicate that about the year 1946 defendant put a post in this roadway which he (plaintiff) pulled up and threw out. Some time not long thereafter defendant had a conversation with plaintiff in which he was ordered to stay off of defendant's land. Defendant also put in some more permanent posts across the roadway and a sign thereon reading, "Keep out. This means you." After his use of the passway was stopped by defendant, plaintiff offered him $150 for the right to use the same. He related that this was done to "save a lot of trouble." Defendant refused the offer and shortly thereafter this suit was filed by plaintiff.
It is conceded by plaintiff that the roadway in question has never been improved, ditched, or any sort of culverts constructed. It meanders considerably and is somewhat grown up with brush. It cannot be seen from defendant's house and perhaps not from any of his tillable land.
*399 Plaintiff has the use of another roadway from his land to the highway through the farm of Mr. Shannon. His testimony indicates that it is impractical to take out much of his timber by that route because of a steep hill located on plaintiff's land. Plaintiff testified further that he was 51 years old, had hunted squirrels in this area since he was a boy and had observed that the roadway in question was in existence during all of that time.
Fred Beckner testified for plaintiffs to the effect that his uncle had once owned the Burnett land and that this roadway was in use from 1886 to 1904. The witness left this area in 1904, but was back once or twice squirrel hunting in 1922 and while he paid very little attention to the road he did observe that it was still there.
William C. Harrison testified that the roadway had been in existence since 1927, but on cross-examination he admitted he had never seen anyone use it except plaintiff.
Tucker Shannon, who lives just north of plaintiff's land, testified that various owners of this tract had taken timber out over this roadway as long as he could remember. He admitted on cross-examination, however, that the only use he had actually seen was when he helped a Mr. Rose haul wood out about 20 years ago.
The testimony of defendant William Sladek was the only important evidence offered by the defense. He purchased the land in controversy in 1939, but had lived in that vicinity for 40 years. He stated positively that plaintiff was the only person he had ever seen use this roadway and that there was no sign of any passway across this land until plaintiff started to use it; that plaintiff did not always use the same route in crossing this tract; that while home on a furlough from the navy in 1944 he put the first post in the roadway and in 1946 or 1947 told plaintiff to quit crossing his land and posted the sign mentioned heretofore.
This being an equitable action it is our duty to try the case de novo, weigh the evidence upon the factual issues and reach our own conclusions therefrom. In this situation, however, an appellate court will usually defer to the findings of the trial chancellor where there is conflicting verbal testimony. The chancellor can observe the actions and conduct of the witnesses that appeared before him and can more accurately determine their credibility and the weight to be accorded their testimony. Ash Grove Lime & Portland Cement Co. v. White, 361 Mo. 1111, 238 S.W.2d 368; State ex rel. Taylor v. Anderson, Mo.Sup., 242 S.W.2d 66.
We have carefully read the testimony in this record. It is definitely conflicting and in this situation we feel it proper to apply the well settled rule that we should defer to the conclusions of the chancellor.
The general rule is well recognized in this state that an easement may be acquired by prescription by use, for the period of 10 years, which is shown to be substantially the same as the adverse possession that will be considered sufficient to give title to real estate. It must be hostile, under a claim of right, actual, open, notorious, exclusive, and continuous. The person claiming the easement has the burden of proving by clear and positive evidence each and every element essential to its establishment. Zinser v. Lucks, 361 Mo. 671, 235 S.W.2d 844.
The trial court found, "That the user of defendants unenclosed, rough, undeveloped 20 acres of land for a roadway by plaintiffs, and those under whom they claim, was not a sufficient adverse possession to be hostile and under a claim of right an actual, open, notorious, exclusive and continuous user to ripen into a prescriptive right or easement over defendants' land." We agree with this conclusion of the court. It is justified by the evidence and the law applicable thereto. In 28 C.J.S., Easements, § 18, (i), page 673, the following rule is stated: "the mere use of a right of way through uninclosed lands, especially woodland, will not give a right of way by prescription, the view being taken that such user is deemed permissive and raises no presumption that the use is under a claim of right which must *400 be established in some manner other than by mere user."
The doctrine is stated in Bradley v. City of Harrodsburg, 277 Ky. 254, 126 S.W.2d 141, 142, as follows: "If the land is waste or unenclosed land, the owner having no reason for keeping persons off, a normal inference would be that the user is permissive. The law does not require an owner to adopt a `dog in the manger' attitude in order to protect his title to this species of property." See also to the same effect, Du Mez v. Dykstra, 257 Mich. 449, 241 N.W. 182; Walthers v. Tanner, 204 Okl. 598, 233 P.2d 303; Barnett v. Toole, 253 Ky. 198, 69 S.W.2d 378, and Anson v. Tietze, 354 Mo. 552, 190 S.W.2d 193.
Plaintiffs strongly contend that after a showing of open, visible use for the prescribed period, the burden is cast upon the defendants to show that the use was permissive rather than adverse, citing Meyer v. Everett, Mo.App., 235 S.W.2d 130, and Smith v. Santarelli, Mo.App., 207 S.W.2d 543. We do not disagree with this statement of law, but under the facts and circumstances in this case the rule is not applicable. In Walthers v. Tanner, supra, this precise rule was under consideration but was held not to be determinative, the court, 233 P.2d at page 306, saying, "the burden of proof is upon one claiming a prescriptive easement for road purposes over unenclosed pasture land to establish that the user was adverse, and such fact is not established by mere proof of user for the prescriptive period".
Also, there is nothing in the evidence to indicate that defendants or those under whom they claim, had any knowledge of the use of this passway until after plaintiffs began the use of it. This use by plaintiff was not for the prescribed period of time. There must be proof of actual knowledge or use of such a character that knowledge will be presumed. It would appear that the chancellor was correct in his conclusion that the occasional use of this roadway to haul out timber, considering the nature and character of the land, would not impart constructive notice of said use to the owners of the land and particularly that same was under a hostile claim of right thereto.
We are not holding that a roadway cannot be obtained over wild and unenclosed land by prescriptive use. We do hold that in such a case the use is presumed to be permissive, and stronger evidence is required to establish all of the essential elements of the prescriptive claim than in the case of enclosed land.
We have found no reason for disturbing the decision of the trial court. The decree should be affirmed. It is so ordered.
BENNICK, P. J., and ANDERSON, J., concur.