O. R. SALMON, A. C. Mitchell and F. M. Albright, Jr., Plaintiffs in Error,

v.

Harry W. GIBSON, Jr., Executor of the Estate of Robert Lee Williams, Deceased, Defendant in Error.

No. 37100.

Supreme Court of Oklahoma.

Dec. 17, 1957.

Rehearing Denied Jan. 28, 1958.

**370**

Wallace W. Gates, Paul & Montgomery, Durant, for plaintiffs in error.

Priscilla W. Utterback, Durant, for defendant in error.

JACKSON, Justice.

The issues in this appeal arise out of a quiet title action tried in the District Court of Bryan County, Oklahoma. The action was brought by O. R. Salmon, A. C. Mitchell and F. M. Albright, Jr., as plaintiffs, against Harry W. Gibson, Jr., executor of the estate of Robert Lee Williams, deceased, as defendant, to quiet plaintiffs' alleged title to certain accreted land in Section 15, Township 8 South, Range 12 East. The trial court quieted plaintiffs' title to the land lying north of a certain fence in Section 15, but denied plaintiffs any interest in the land lying south of said fence. The land south of the fence was quieted in the executor of the Williams estate, on his cross-petition, and plaintiffs appeal.

While the location of the accreted land is not of particular importance to the issues in this case it may be helpful to point out that plaintiffs are the owners of deeded land on the north side or portion of Section 15. The accreted land in question lies south of their deeded land. The Williams estate owns deeded land and some accreted land in Section 16 lying immediately west of the accreted land in question. One A. P. Blackwell, now deceased, owned deeded land immediately south of the Williams land. The Blackwell land was south and west of the accreted land in question and partially adjacent thereto.

The weight of the evidence shows that Blackwell fenced the accreted land in question in 1922 and claimed ownership of same until his death in 1945. During this period he rented the land to various individuals, several of whom testified as to Blackwell's occupancy and claim of ownership, throughout the period from 1922 until 1945.

In our opinion the evidence reasonably supports the conclusion that Blackwell acquired title to the disputed land by prescription so that title was vested in him at the time of his death in 1945, and thereafter passed to his heirs.

It further appears from the record that in 1946 Williams became interested in buying the Blackwell land, and as a preliminary to such purchase caused a survey to be made by the County Surveyor. The survey located the section line between sections 15 and 16 and also located the boundaries between the Williams land and the Blackwell land. This survey line between sections 15 and 16 necessarily identified that part of the accretion located in sections 15 and 16, respectively. It is this survey which apparently provoked the difficulty, as will hereinafter be shown.

Three months after the survey, and in August, 1946, Williams purchased the Blackwell deeded lands from the Blackwell estate and went into immediate possession thereof, and also went into possession of the accreted land in question in section 15.

Plaintiffs base their claim of title to the accreted land in question by virtue of the above mentioned survey. They contend the survey was a statutory survey made under the provisions of 19 O.S.1951 §§ 582,

583, 586 and 587, and assert that the survey permanently established the boundary lines and constituted a permanent division of the accretion. They also contend that all of the accreted land in section 15 was set apart to plaintiffs' predecessor in title, E. M. Craighead, as shown by the Surveyor's Certificate, which certificate was executed and filed several months after the survey. With these contentions we cannot agree.

Section 582 provides in substance that when adjoining owners desire a survey to establish corners and boundaries the surveyor will give written notice or notice by publication upon all owners who may be affected by such survey, unless written consent is given by all such owners.

Section 586 provides in substance that the boundaries so established shall be considered as permanent if the survey is made in conformity with the statutes.

Section 583 provides in substance that the surveyor shall prepare an accurate plat and field notes which shall be filed in the County Surveyor's office within thirty days after the survey is completed.

The record fails to show that the plat and field notes were filed within the thirty day period. Such field notes do not mention accretion or indicate that a division of such was being made. A certificate executed by the surveyor states that the accretion was divided but it was not executed until more than five months after the survey. No written notice was given to any of the landowners and no consent in writing was obtained from any of the owners. The administrator of the Blackwell estate was present at the time of the survey but none of the owners who then owned plaintiffs' land were present or, so far as the record discloses, had knowledge of the survey.

Plaintiffs cite Chisholm v. Blanton, 104 Okl. 146, 230 P. 683, which holds that filing of the plat and field notes within the prescribed period is a mere directory provision and that the failure to file within the thirty day period will not invalidate the survey. In the cited case this court quotes from the Kansas case of Close v. Huntington, 66 Kan. 354, 71 P. 812, wherein the court held that one instituting a survey under the statutory procedure could not attack the survey collaterally even though all the interested owners did not receive notice. These cases are not in point. In each of these cases there was a clear intent and an admitted attempt to institute the survey under the statutory procedure and there was substantial compliance with the statute. In the case at bar none of the statutory requirements were met other than the recording of the certificate almost six months later in which accretion was mentioned for the first time. In our opinion the evidence fails to establish an intent or attempt on the part of Williams to institute a statutory survey. On the contrary we are of the view that the survey was a private survey made for the sole purpose of establishing the boundary line between the Williams and Blackwell lands. The fact that a part of such line runs through the accreted lands is of no persuasive force.

The evidence conclusively shows that Williams was not claiming title to any of the accreted land in section 15 at the time the survey was made; therefore, there is no logical reason why he would attempt to allocate it to plaintiffs, and indeed he could not do so. The evidence established Blackwell's title to the disputed land at that time by adverse possession.

After the survey was made Williams constructed a fence along the line between sections 15 and 16 but did not extend it so far south as to separate the disputed land from the Blackwell land. After acquiring his deed from the Blackwell estate he went into immediate possession of the disputed land. Soon thereafter he erected a fence running east and west across the disputed land approximately 100 yards south of an old fence maintained by Blackwell.

Several of plaintiffs' witnesses testified that Williams told them he did not own this land, but these statements were made prior to the time he purchased the Blackwell land.

We do not decide whether accretion can be divided by a statutory survey and nothing

more. Neither party discussed this question in his brief, and such decision is unnecessary in view of the fact that the survey in this case was not made according to the statutes, but we are inclined to the view that the purpose of a survey is to locate pre-existing boundaries and corners and not to transfer or create title to real property. In Edwards v. Fleming, 83 Kan. 653, 112 P. 836, 837, 33 L.R.A.,N.S., 923 a similar question was before that court. In the sixth paragraph of the syllabus it was held:

"A statutory survey may establish the permanent boundaries between two tracts of land, but cannot change the title to the land."

The very nature of the accretion in this case would compel many and varied considerations in order to determine the ownership of said accretion, and the manner in which it should be divided. It is extremely doubtful that the Legislature intended to vest the power to make such determination in the County Surveyor.

■ Plaintiffs also contend that the Williams estate is estopped to challenge plaintiffs' title for the reason that Williams occupied the disputed land as a tenant of plaintiffs' predecessor in title. In support of this contention plaintiffs rely upon a proposal allegedly signed by Williams wherein he proposed to occupy the disputed land as a tenant of E. M. Craighead, plaintiffs' predecessor in title. Plaintiff testified that the original was given to him, but he offered in evidence an alleged unsigned copy of the proposal which was admitted over the objection of the defendant executor. The trial court properly rejected this evidence in the special findings of fact.

The oral testimony of plaintiffs' attorney did not show sufficient diligence to procure the original, nor did it show that the original could not be produced. Therefore, the unsigned copy of the proposal was not admissible. Pringey v. Guss, 16 Okl. 82, 86 P. 292, Lowe v. Cravens, 112 Okl. 190, 240 P. 638.

■ Plaintiffs invite our attention to 67 O.S.1951 § 65, which provides that in an action where the title to lands is in controversy, it shall be lawful to receive in evidence copies of any instrument in writing relating to such lands if the party offering such copy, or his attorney, states, orally, under oath, or by an affidavit that the original is "lost or destroyed, or not within the *power* of the party to produce the same." The affidavit executed by plaintiffs' attorney stated only "that the original is not in the possession or *control* of affiant or the plaintiffs." If this statute is applicable the affidavit falls short of the statutory requirement.

Plaintiffs finally contend that if plaintiffs have no title to the disputed lands the trial court nevertheless erred in quieting the title in the Williams estate. This contention is apparently based upon the proposition that the defendant has no title to the disputed land and that it was error to quiet his title thereto. We find it unnecessary to consider this proposition at great length.

The trial court found language in the deed from the Blackwell estate to Williams which, when read in conjunction with the contemporaneous transfer of possession of the disputed land, together with an acquiescence in such possession by the heirs and executor of the Blackwell estate, caused the trial court to believe there was an intention to transfer title to the disputed land from the Blackwell estate to Robert Lee Williams.

■ Plaintiffs are in no position to complain. They failed to prove title or right of possession in themselves. The decree quieting title in defendant executor merely establishes that defendant's claim and right of possession is superior to that of plaintiffs. In the body of the opinion in Cherry v. Weathers, 196 Okl. 265, 164 P.2d 615, 617, this court said:

"Much is said in plaintiff's brief concerning the invalidity of defendant's tax deed. The evidence is uncontradicted to the effect that defendant Weathers is in possession. The error,

if any, in quieting her title as against plaintiff's claim is one of which plaintiff cannot complain, and we express no opinion here as to the sufficiency of such deed."

In Jeffers v. Edge, Okl., 295 P.2d 787, we held that possession under a claim of right was sufficient to entitle the one in possession to maintain an action to quiet title against one shown to be a claimant without title.

The judgment of the trial court is affirmed.

CORN, V. C. J., and DAVISON, JOHNSON, WILLIAMS, BLACKBIRD and CARLILE, JJ., concur.