R. K. COMSTOCK and Clara M. Comstock,
Plaintiffs in Error,

v.

O. T. LITTLE and Clara Little,
Defendants in Error.

No. 38776.

Supreme Court of Oklahoma.

Feb. 21, 1961.

P. D. Erwin, Chandler, for plaintiffs in error.

Richard James, Stroud, for defendants in error.

DAVISON, Justice.

This action was instituted April 24, 1957, by O. T. Little and his wife (plaintiffs) against R. K. Comstock and his wife (defendants) seeking a permanent injunction enjoining the defendants from removing a "partition" fence dividing the lands of the respective parties and from coming on the land of plaintiffs and erecting another fence north of the alleged division fence. Reference will be made to the parties as they appeared in the lower court.

Plaintiffs alleged in their petition that in 1907 the Southwest Quarter of Section 13, Township 13 North, Range 4 East of the Indian Meridian was owned jointly as a unit by S. S. Durst and P. F. Smith and that in that year, by exchange of deeds, the title to the North Half was vested in Durst and the South Half was vested in Smith; that thereafter and before 1930 a division fence was erected between the respective parcels of land by the owners thereof and that thereafter the fence was recognized and maintained as a division fence by all subsequent owners; that plaintiffs are the record owners of the North Half and that they and their predecessors in title have been in possession thereof and to the division fence on the south since the erection of said fence and for more than 15 years; that defendants are record owners of the South Half. Plaintiffs further alleged that as a result of a survey caused to be made by the defendants in 1955 the defendants assert the correct line is about 10 feet north of the division fence and are constructing a fence on the asserted correct line. Plaintiffs pray for relief as above stated.

Defendants answered by general denial and alleged "For further answer, defense,

counterclaim and action for relief", admitted the respective record ownership; that plaintiffs wrongfully withheld from defendants possession of an irregular tract south of the (true) line between the north half and the south half of said quarter section and "north of a crooked, irregular, zigzag temporary fence on the North part of plaintiffs' said farm" and that defendants were entitled to immediate possession thereof; that a portion of the alleged fence never existed and that a portion of the "temporary" fence at the west end had been removed and rebuilt by plaintiffs 100 yards south of its former site; that plaintiffs tacitly if not expressly agreed to the new survey and construction of a new fence which defendants had started to erect. Defendants prayed judgment for possession of the disputed strip.

Plaintiffs replied by general denial and plea of estoppel.

The trial court denied defendants' demand for a jury. At the conclusion of all the evidence the lower court granted the prayer of plaintiffs for a permanent injunction and permitted defendants to replace the fence at the west end which had been moved south, "said fence, as replaced, to be on a line with the balance of the division fence as it exists between the two 80 acre tracts." Defendants have perfected their appeal to this court.

The defendants present their assignments of error under a number of heads. Some of these overlap or are so related as to make separate disposition thereof impractical. We believe they may all be disposed of under the propositions hereinafter set forth.

Defendants urge that the evidence is insufficient to sustain the judgment.

The record evidence of title of the parties is uncontroverted. In 1907 S. S. Durst and P. F. Smith jointly owned the title to the said southwest quarter as a unit. In that year by exchange of deeds the title to the north half of the southwest quarter was vested in Durst and title to the south half of the southwest quarter was vested in Smith. Thereafter by mesne conveyances the plaintiffs became the owners of the said north half in 1949 and the defendants became the owners of said south half in 1955.

A careful examination of the record results in the inescapable conclusion that many years ago a division fence was erected east and west across said southwest quarter at about the approximate line between the north and south halves of said quarter section. Neither Durst nor Smith appeared as witnesses. No witness testified as to who erected the fence. The record is void as to the intentions and agreements, if any, of the party or parties erecting the fence. However, in view of the lapse of time and numerous intervening owners, this would appear to be relatively unimportant in the present case. The erection and continued existence of the fence and the acts of the past owners must be used to determine the matter.

Patches of timber have apparently always existed at the east and west ends of the fence.

The residence of plaintiffs (on north half) is located a distance, variously estimated at 300 feet to 500 feet, east of the west line of the quarter section and close to the division fence. Numerous witnesses testified and both sides introduced photographs of the house and fence. There was testimony that the fence and the original part of the house had existed from various dates and from as early as 1911 or 1912. Numerous witnesses testified as to the existence of the fence 20 and 25 years prior to the bringing of this action. The trial judge also viewed the premises.

In 1951 one Stower, tenant on the south half under an owner prior to defendants, under some arrangement with plaintiffs, moved the fence from its location south of plaintiffs' house and some distance west, to a point about 100 feet or more south of its original location. This was done to keep stock from being close to plaintiffs' house. This was done without consent of the then owner of the south half. Ob-

viously such temporary and unauthorized re-setting of the fence created no permanent right to have it remain in its new location nor would it affect previously established rights created by the long continued existence of the division fence. This is the situation that was corrected by the latter portion of the court's judgment when it provided for re-establishment of the division fence, in line with the balance thereof.

The evidence in opposition to a long continued division fence went more to the location thereof and particularly from plaintiffs' house to the west line. This was apparent in estimates of the distance from the house to the fence, which was estimated variously at from 6 feet to 18 feet based on observations at times over periods of the past 30 years or more. Such variations would naturally exist in such a situation.

■ The evidence reflects that the respective owners of the two halves pastured or cultivated to the division fence except in the instance of the mentioned recent removal on the south of plaintiffs' home and' which we regard as not affecting our conclusions herein. It is our opinion that the clear weight of the evidence reflects ·the creation of a division fence and recognition of and acquiescence in the same by the adjoining landowners for a period of more than 15 years. A finding to this effect is inherent in the judgment of the lower court.

■ The law in this state applicable to such situation has now been clearly established and stated. In Buckner v. Russell, Okl., 331 P.2d 401, 402, in the third paragraph of the syllabus by the court we stated:

"Where adjoining landowners occupy their respective premises up to a certain fence line, not erected by them or either of them but which they mutually recognize and acquiesce in for a long period of time, they are precluded from claiming that the boundary line thus recognized and acquiesced in by them, and their predecessors in title, is not the true line. The length of time of such recognition, acquiescence and occupancy is 15 years as required by

12 O.S.1951, § 93, to acquire title by prescription."

See also Lewis v. Smith, 187 Okl. 404, 103 P.2d 512; Holt v. Hutcheson Okl., 333 P.2d 530; Beckman v. Metzger, Okl., 299 P.2d 152; Cornelison v. Flanagan, 198 Okl. 593, 180 P.2d 823; and Midland Valley R. Co. v. Imler, 130 Okl. 79, 262 P. 1067, 69 A.L.R. 1404, to the same effect.

Defendants contend the boundary line fixed by the county surveyor is binding and conclusive on the parties. This survey fixed the line between the north and south halves of the quarter section as approximately 10 feet or more north of the established division fence. This contention is based upon the provisions of 19 O.S.1951 § 582 et seq., providing for survey at request of adjoining landowners. Section 582 provides for use of the county surveyor by mutual agreement or by one landowner in case of dispute as to the true boundary line. In the latter instance it was provided written notice be served on the person affected by the survey or left at his usual place of residence 6 days prior to the date fixed for the survey. We are of the opinion that defendants' contention must fail for several reasons.

■ Evidence of use of the surveyor by agreement is unsatisfactory and is positively denied by plaintiffs. There is no evidence the parties notified the surveyor to make the survey as is required by the statute. The surveyor testified he made the survey at the request of defendants and was paid by them. No notice was served on plaintiffs. There is testimony a notice was mailed to plaintiffs. None of the parties were present when the survey was made. No substantial attempt was made to comply with the provisions of the statutes and would have no binding effect upon plaintiff within the terms of the statutes. See Salmon v. Gibson, Okl., 321 P.2d 369, 372.

Furthermore, we fail to see in what manner the survey is pertinent to the decisive issues presented by the pleadings and evidence. The decisive issues are the estab-

lishment of the division fence, the period of its existence and the recognition and acquiescence thereto by past and present adjoining landowners.

In Salmon v. Gibson, supra, we said:

"* * * we are inclined to the view that the purpose of a survey is to locate pre-existing boundaries and corners and not to transfer or create title to real property. * * *"

In Fellows v. Willett, 98 Okl. 248, 224 P. 298, 299, the fifth paragraph of the syllabus by the court is as follows:

"In making a survey or resurvey of lands the county surveyor is not authorized to take into consideration adverse possession and claims in locating lines and corners of sections or tracts of land. The duty of the county surveyor in making a resurvey of a former government survey is to locate the lines and corners of the section as fixed by the government survey without regard to adverse claims by adjoining landowners. On appeal from the surveyor's report it.is not proper to try adverse claims between the parties."

See also Rocher v. Williams, 183 Okl. 221, 80 P.2d 649, 651.

Defendants also contend that the injunction should have been limited to maintaining the status quo until the issue of title had been determined in a law action and that an action for permanent injunction was not the proper remedy. Defendants say that the proper remedy is ejectment.

After the filing of the present action the defendants filed their own action against the plaintiffs herein for possession of the strip of land. That case was No. 16784 in the District Court. Defendants also filed an original action in this court against the trial judge, being No. 38250, asking for a writ prohibiting said judge from trying the present appealed action and directing said judge to first try No. 16784. This court by order refused to assume original jurisdiction of the matter.

Under the provisions of 12 O.S.1951 § 1381, injunction may be the final judgment in an action, or may be allowed as a provisional remedy.

In the present case the plaintiffs were in possession to the division boundary fence. After the survey defendants repeatedly came across the fence and upon the intervening strip to lay posts and to later dig holes and commence setting the posts. These acts were performed over a period of weeks or months prior to plaintiffs bringing their action. The acts constituted trespasses. Under such circumstances plaintiffs were rightly entitled to appeal to a court of equity to protect their possession by injunctive relief and not to be relegated to bringing repeated suits in ejectment. See Deskins v. Rogers, 72 Okl. 274, 180 P. 691, as supporting this conclusion, wherein temporary injunction was issued to protect plaintiffs' possession and upon final hearing permanent injunction was granted.

This brings us to the determination of the question of the right of plaintiffs to use the remedy of injunction in the situation presented by this appeal. It is again emphasized that plaintiffs were in possession up to the disputed division fence. Plaintiffs' action was not one to recover possession and defendants' cited cases that injunction cannot be used as a substitute for ejectment to recover possession of real estate are not in point.

This court has had before it a number of cases involving boundary lines and the determination of the same as fixed by fences, walls, buildings and improvements. Some of these cases were actions for injunctions to enjoin parties from interfering with or removing the division fence, wall or structure allegedly fixing such boundary lines for a period of time in excess of the statutory period for adverse possession. The courts of this state in such cases have uniformly determined the issues of the location of the boundary line dependent upon such fences or structures and given or denied relief to the parties therein. Typical of such cases involving injunctive relief are the following: Walthers v. Tanner, 204 Okl. 598, 233 P.2d 303; Buckner v. Rus-

sell, supra; Lewis v. Smith, supra; Midland Valley R. Co. v. Imler, supra. We find no merit in defendants' contention.

Defendants further contend their demand for a jury trial was wrongfully denied by the trial court.

Our statutes regarding trial of the issues are 12 O.S.1951 §§ 556 and 557, and state respectively:

"Issues of law must be tried by the court, unless referred. Issues of fact arising in actions for the recovery of money, or of specific real or personal property, shall be tried by a jury, unless a jury trial is waived, or a reference be ordered, as hereinafter provided."

"All other issues of fact shall be tried by the court, subject to its power to order any issue or issues to be tried by jury, or referred as provided in this code."

■ Examination of our decisions involving the question of. establishment of a division boundary line by acquiescence reveals that we have uniformly designated them as being actions of equitable cognizance. Cornelison v. Flanagan, supra; Buckner v. Russell, supra; and Midland Valley R. Co. v. Imler, supra.

In Lewis v. Smith, supra, the pleadings, issues and factual situation were practically identical with those in the present appeal. In discussing the pleadings we described the action as being one that had turned into an action to quiet title. In that case the question presented was establishment of a boundary fixed by a division fence to which the parties had long acquiesced.

In Rocher v. Williams, supra, the plaintiff sued to quiet title to land in his possession relying on a long existing division line fence. The defendants cross-petitioned asking that plaintiff be ejected from the land between the surveyed line and the division fence. Therein we held the action was one in equity to establish a boundary line, and to quiet title in the one in possession, which· was also of equitable cognizance and not an action of the character wherein *plaintiff* was entitled to a jury.

■ The fact that defendants have by "counterclaim and action for relief" prayed for possession or recovery of real property and thereby ejectment of the plaintiffs does not necessarily mean that defendants are entitled to a jury as a matter of right. In Green v. Correll, 133 Okl. 94, 271 P. 241, this court stated in the first paragraph of the syllabus:

"The character of an action is determined by the nature of the issues made by the pleadings and the rights and remedies of the parties, and not alone · by the form in which the action is brought or by the prayer for relief."

In the present case the plaintiffs' action was one for an injunction and hence was one of equitable cognizance. Goodall v. City of Clinton, 196 Okl. 10, 161 P.2d 1011. The action of plaintiffs was instituted to establish a boundary line by acquiescence and also was of equitable cognizance. The answer of defendants made this the issue in the action and defendants' right to possession was dependent on this issue being first determined. The paramount issue as formed by the pleadings and the gravamen of the action was of equitable cognizance and there was no right to a jury trial even though the right of defendants to possession of the property was incidentally involved.

The briefs do not furnish and our independent research has not discovered a decision of this court applying this rule of law to the situation existing in this case. However, our conclusion is supported by decisions of this court in which, under other circumstances, the paramount issue and gravamen of the action was of equitable cognizance. See Moschos v. Bayless, 126 Okl. 25, 258 P. 263; Howard v. Stanolind Oil & Gas Co., 197 Okl. 269, 169 P.2d 737, 741; Ward v. Lindly, Okl., 294 P.2d 296; and Smith v. Stock Yards Loan Co., 186 Okl. 152, 96 P.2d 55.

■ In an action of equitable cognizance we will review and weigh the evidence but will not reverse the trial court where its

judgment is not clearly against the weight of the evidence. Buck v. Caldwell, Okl., 340 P.2d 485.

Affirmed.