Ralph ROBBINS and Ikie Robbins, Plaintiffs-Respondents,

v.

R. P. ANDERSON, Eithel Hobbs, Vonda Luna and Mearl Anderson, Defendants-Appellants.

No. 7260.

Springfield Court of Appeals.

Missouri.

Jan. 24, 1955.

810

Green & Green, West Plains, for defend-ants-appellants.

Rogers & Rogers, Gainesville, for plaintiffs-respondents.

STONE, Judge.

In this action plaintiffs, the owners of a tract of 80 acres in Ozark County, Missouri, seek a mandatory injunction requiring removal of obstructions from a claimed "private road by prescription" running from the residence on plaintiffs' land (hereinafter called the Robbins tract) in a general northerly direction across defendants' contiguous tract of "95 acres, more or less" (hereinafter called the Anderson tract) to an east-and-west county road along the north side of the Anderson tract. Defendants appeal from a decree granting the requested injunctive relief.

There are three different private roads over which the residence on the Robbins tract has been reached. One of these (mentioned infrequently in the record and not hereinafter referred to) proceeded in an easterly direction over the Robbins tract to a north-and-south lane along the east side of the Anderson tract which led to the county road on the north. Another of the three private roads (mentioned frequently in the testimony and hereinafter referred to as the Mullins road) ran from the residence on the Robbins tract in a northerly direction through a gate in the east-and-west fence between the Robbins and Anderson tracts, continued in a northerly direction on the Anderson tract for a short distance (to "the middle of the Anderson field" or "for a little ways") to a "fork" in the road, turned abruptly to the east over the Anderson tract to the north-and-south lane on the east side of that tract, and then ran north over that lane to the east-and-west county road at the north end of the lane. The third private road (hereinafter referred to as the disputed road) ran from the Robbins residence in the same northerly direction through the same gate in the boundary fence (hereinafter referred to as the south gate) and over the same route as the Mullins road to the "fork" in the road on the Anderson tract, "then the (disputed) road took off down the hill (con-

tinuing in the same general northerly direction) toward the cemetery, just kind of winding around the trees," and entered the east-and-west county road a short distance west of the cemetery.

■ Plaintiffs asserted that, during April, 1952, defendant R. P. Anderson closed the two wire gates (referred to as the west gate and the east gate—only "4 or 5 steps" apart) in the east-and-west fence along the north line of the Anderson tract and the south line of the parallel county road. The disputed road originally passed through the west gate. However, a change in the county road about 1947 left a steep clay bank at the west gate, making it impossible, as plaintiff Ralph Robbins said, for motor vehicles to pass through that gate— "afoot would be the only way." Thereafter, the east gate afforded "a better way of getting in." Whether plaintiffs may enjoin obstruction of the disputed road depends upon whether they have acquired a prescriptive right to use that road; but, since plaintiffs seek only injunctive relief, this court has appellate jurisdiction. Judge v. Durham, Mo., 274 S.W.2d 247; Gibson v. Sharp, Mo., 270 S.W.2d 721; Smith v. Santarelli, 355 Mo. 1047, 199 S.W.2d 411.

■ "'The four essential facts for the plaintiffs to prove in order to sustain their claim to an easement by prescription are, first, user for the prescribed period; second, that the user was adverse; third, that it was under a claim of right; fourth, notice to the owner of the user, and of its character and of the claims of right.'" Roberts v. Quisenberry, 362 Mo. 404, 242 S.W.2d 26, 28(2); Novinger v. Shoop, Mo., 201 S.W. 64, 67; Anthony v. Kennard Bldg. Co., 188 Mo. 704, 87 S.W. 921, 924. As claimants of a prescriptive easement, plaintiffs have the burden of proving each essential element by clear and positive evidence. Burnett v. Sladek, Mo.App., 251 S.W.2d 397, 399(6); National Cylinder Gas Co. v. G. H. Packwood Mfg. Co., Mo. App., 208 S.W.2d 825, 828(6). See and compare also Horton v. Gentry, 357 Mo. 694, 210 S.W.2d 72, 75(2); White v. St. Louis Post Offices Corporation, 348 Mo.

961, 156 S.W.2d 695, 700(7). Plaintiffs lean heavily upon the principle that, when open, continuous, visible and uninterrupted use for a period of more than 10 years is shown, the presumption is, in the absence of proof to the contrary, that the use was adverse rather than permissive, Fassold v. Schamburg, 350 Mo. 464, 166 S.W.2d 571, 572(2); Meyer v. Everett, Mo.App., 235 S.W.2d 130, 136(2); Smith v. Santarelli, Mo.App., 207 S.W.2d 543, 545(2); Wallach v. Stetina, Mo.App., 28 S.W.2d 389, 391(3); Gerstner v. Payne, 160 Mo.App. 289, 142 S.W. 794, 795(1); but, obviously no such presumption can be indulged unless and until open, continuous, visible and uninterrupted use for the prescriptive period has first been established.

It was stipulated that the disputed road was graded with county road equipment on October 29, 1945 (at the expense of George Dye, the then owner of the Robbins tract, and not with public funds); and, we have no doubt but that, from and after that date, the use of the disputed road was such as would have ripened into an easement by prescription, *if the use had been continued without interruption for the required prescriptive period of 10 years.* However, in our view of the evidence, the fundamental frailty of plaintiffs' position is that they did not carry their burden of proof as to the first essential element, i. e., open, continuous, visible and uninterrupted use for not less than 10 years prior to April, 1952, when the gates at the north end of the disputed road were closed.

Plaintiffs purchased the Robbins tract in 1950. Plaintiff, Ralph Robbins, said that he had "known" the disputed road "all my life." But, his age is neither shown nor suggested by the record; and, when asked how long he had "traveled" the disputed road, Robbins stated "ever since George Dye moved there, back and forth." The Dyes, Robbins' uncle and aunt, moved onto the Robbins tract in 1940 and lived there for 6 or 7 years. Mr. Dye testified that he had "known" the disputed road "for better than 45 years," and his wife said that she had "gone over it in the wagon before I was married" 46 years ago. Both also

testified on *direct* examination that the disputed road was the only road to the Robbins tract while they lived there. However, Mr. Dye admitted on *cross*-examination that "there were three different ways" to the Robbins tract and that "they (sic) hadn't been much travel on it (the disputed road)," and Mrs. Dye stated that "we done most of our traveling" over the Mullins road "until we had that grading done" in October, 1945. When witness Crawford, 74 years of age who had owned the Robbins tract prior to 1940, was asked "about how long has that (disputed) road been there," his reply was "well, as far as I know, it's been there for 65 years, or something like that." However, he also said "I didn't have much use for it—I have used it to haul feed over it once" about 30 years ago, and he volunteered the significant comments that "they (sic) was * * * not much travel, ever, on that road"—"it wasn't used much nohow; just goin' back in the range." These were the only witnesses who had "known" or traveled the disputed road *prior to October, 1945,* and the foregoing reflects their testimony as to the nature and extent of the alleged user.

On the other hand, there is persuasive testimony that the disputed road was neither traveled nor travelable by vehicles until it was graded in October, 1945. E. E. Upton, one of the grading crew who was called as a witness for *plaintiffs,* "didn't see no sign of any road there" prior to the grading, although "there might have been some paths around the cemetery." In locating the route graded, witness Upton said that, after coming "a few feet" north of the south gate, "we left the print of the old road or the road that was traveled there as I seen it and just took off down through the woods there to the corner of the cemetery." Witness Farmer, another member of the grading crew who was called as a witness for *defendants,* remembered that there had been a plain, well-established road from the south gate "about half-way" across the Anderson tract (apparently to the road "fork"), conceded on cross-examination that "there might have been a path

or something" from that point north to the cemetery and county road, but insisted "there wasn't no road there."

George Howard, who bought the Robbins tract from the Dyes about 1946 or 1947 and owned it for perhaps one year, but who had lived in the neighborhood for about 30 years, said that the Mullins road was "the only way we went before the (disputed) road was graded." Although conceding that, prior to the grading in October, 1945, he had not tried "to get through with a wagon" from the road "fork" near the middle of the Anderson tract north to the county road, witness Howard pointed out that "there's trees in there" and "the trees didn't run straight," stated that there had been "just a pathway up through there" and that he "didn't think a fellow could" have traveled that route even in a wagon, and was positive that "there sure wasn't" a road there. John Walrath, who had lived in the neighborhood 41 years, said that the Mullins road was "the only road" to the Robbins tract he had known before the disputed road was graded. Defendant R. P. Anderson, his three children (codefendants herein), and their spouses gave even more positive, although not more persuasive, testimony to the same effect. From all of the foregoing, we cannot say with any assurance that there had been open, continuous, visible and uninterrupted use of the disputed road prior to the grading on October 29, 1945, and thus we are unable to find user for the required prescriptive period of 10 years prior to April, 1952.

Another essential element of plaintiffs' prescriptive claim was notice, either actual or constructive, to the landowners of the user, of its adverse character, and of a claim of right. Roberts v. Quisenberry, supra, 242 S.W.2d loc. cit. 28(2); Zinser v. Lucks, 361 Mo. 671, 235 S.W.2d 844, 849–850(7, 8); Anson v. Tietze, 354 Mo. 552, 190 S.W.2d 193, 199(15); Burnett v. Sladek, supra, 251 S.W.2d loc. cit. 400; Marshall v. Callahan, Mo.App., 229 S.W.2d 730, 732(3). See and compare Hilgert v. Werner, 346 Mo. 1171, 145 S.W.2d 359, 361(4). The record leaves us in doubt as

to whether the north line of the Anderson tract along the east-and-west county road had been fenced prior to October, 1945; but, in any event, there was no showing that, prior to grading, there had been any clear, plain or well-defined way along a fixed or definite route from the road "fork" near the middle of the Anderson tract north to the county road. On the contrary, even the evidence most favorable to plaintiffs indicated no more than infrequent or occasional travel by wagon and team over a pathway or woods trail through rough, hilly, timbered land. There was no suggestion that defendants had actual knowledge of any use of the disputed road prior to October, 1945, and constructive knowledge of the alleged user, of its adverse character, and of a claim of right may not reasonably be inferred under the circumstances of this case.

■ In this equity suit, our review must be de novo, Larner-Diener Realty Co. v. Fredman, Mo., 266 S.W.2d 689, 691(3); Amitin v. Izard, Mo.App., 252 S.W.2d 635, 638(1); and, even though we accord due deference to the opportunity of the trial chancellor to judge of the credibility of the witnesses, Marshall v. Callahan, supra, 229 S.W.2d loc. cit. 732(1), we must accept the responsibility of weighing the evidence and reaching our own conclusions, Ash Grove Lime & Portland Cement Co. v. White, 361 Mo. 1111, 238 S.W.2d 368, 370(1); Faire v. Burke, 363 Mo. 562, 252 S.W.2d 289, 290(1); Cross v. Gimlin, Mo., 256 S.W.2d 812(3). Although we entertain the highest respect for the perspicacity and ability of the learned chancellor, "the obligation of due deference does not permit us to yield our own firm convictions because another tribunal possessed of an equal sense of justice may have found differently upon the same facts", Tebbe v. Tebbe, 223 Mo.App. 1106, 21 S.W.2d 915, 918; and, "after considering the advantage enjoyed by the chancellor, if a careful consideration of all the evidence convinces us that a wrong decision has been made, we must not follow the easy way and affirm the judgment." McBee v. Twin City Fire Ins. Co., Mo.App., 238 S.W.2d 685, 688(1). See also Sellers v. Swehla, Mo.App., 253 S.W.2d 847, 853; Needham v. Needham, Mo.App., 299 S.W. 832, 835.

We have not overlooked the fact that defendant, R. P. Anderson, made no objection when the disputed road was graded, or the statements of said defendant upon trial that he had not objected to plaintiffs' use of the *west* gate, or *defendants'* evidence that, in fact, the *west* gate had never been closed. Nor have we been influenced by the glib recital by defendant R. P. Anderson of an alleged conversation with "old man" Dye in 1945, which revealed remarkably keen lay insight into the law of permissive user. For, all such evidence as to what occurred during and subsequent to October, 1945, does not tend to establish either that there had been open, continuous, visible and uninterrupted use of the disputed roadway for any period *prior to October 29, 1945,* or that defendants had, *prior to that date,* notice of the user, of its adverse character, and of a claim of right.

■ Whether plaintiffs presently have other roads to and from the Robbins tract is not germane to the issue on appeal. "Necessity is not the basis for establishing a prescriptive easement (Roberts v. Quisenberry, supra, 242 Mo. loc. cit. 28); and, 'mere convenience or a shorter route is not sufficient to create or convey a right or easement, or impose burdens on land other than those granted * * *.' (Marshall v. Callahan, supra, 229 S.W.2d loc. cit. 734(6))." Miller v. Berry, Mo. App., 270 S.W.2d 666, 671(9, 10).

■ Having in mind also that, although each case must be determined on its own facts, the tendency is to restrict the right of one to acquire a prescriptive easement over the land of another, Zinser v. Lucks, supra, 235 S.W.2d loc. cit. 848; Miller v. Berry, supra, 270 S.W.2d loc. cit. 670(7); 28 C.J.S., Easements, § 18, pages 663–664, we are impelled to the conclusion that, upon the record before us, plaintiffs failed to carry the burden of establishing their claimed prescriptive right as to that portion of the disputed road between the road "fork" on the Anderson

tract and the gates at the north end of the road. The rights of the parties with respect to use of the south gate and the Mullins road are not in issue or ruled in the instant case. It is the judgment of this court that the cause be reversed and remanded with directions to dismiss plaintiffs' bill for want of equity.

McDOWELL, P. J., and RUARK, J., concur.