Eugenia JENKINS, Kenneth Jenkins, and Willie Jenkins (Plaintiffs), Respondents,

v.

J. B. GERMAN and Robert Lawrence (Defendants), Appellants.

No. 29472.

St. Louis Court of Appeals.

Missouri.

Feb. 5, 1957.

Ward & Reeves, Caruthersville, for appellants.

Blanton & Blanton, Sikeston, and Robert Gowen, Ferguson, for respondents.

MATTHES, Judge.

In this action plaintiffs seek to restrain and enjoin defendants from obstructing a road in Pemiscot County, Missouri, and from interfering with plaintiffs in repairing and passing over the same. The venue was changed to the Cape Girardeau Court of Common Pleas. Following trial the court found that plaintiffs had access to the road, which was described as being 15 feet on each side of the center line, a detailed description of which appears in the judgment, and the defendants were perpetually enjoined from obstructing or interfering with plaintiffs and others in repairing and using the roadway. The decree also directed the defendants to remove all obstructions placed by them thereon. Defendants have appealed.

The specific purpose of this action is not to establish a roadway or an easement therein, but to prevent interference with the use of a roadway allegedly in existence. In this situation title to real estate is not directly involved, and jurisdiction is in this court. Bridle Trail Association v. O'Shanick, Mo.App., 290 S.W.2d 401; Lozier v. Bultman, Mo.App., 286 S.W.2d 43; Robbins v. Anderson, Mo.App., 274 S.W.2d 809; Burnett v. Sladek, Mo.App., 251 S.W. 2d 397.

The amended petition upon which the case was tried designated the way in question as the Racetrack Road, and alleged that it passed through or between the properties of defendants, German and Lawrence; that it extended from a public road

on the east in a westwardly direction and terminated at another public road on the west adjacent to property owned by plaintiffs; that for a time in excess of the period of limitations plaintiffs had used the roadway under a claim of right, in defiance of defendants' title, and the use had been open, continuous, adverse, and hostile to defendants and their predecessors in title; that as the result of such use plaintiffs owned or possessed an easement over Racetrack Road and the right to use the same by prescription. It was also averred that by virtue of continuous use by the public for a period in excess of 10 years, and the expenditure of public funds thereon by Pemiscot County, Missouri, for such period, Racetrack Road was a public road. There is an allegation that defendants erected fences across the road in October, 1951, which constituted an unlawful obstruction thereof. The court made no finding or declaration as to the character or status of Racetrack Road, i. e., whether it was a private or public thoroughfare, but, as stated, simply found plaintiffs had the right to use it and enjoined defendants from interference with such use.

From the record it appears that Racetrack Road extends in an east and west direction. We are favored with a plat prepared by an engineer on behalf of defendants, drawn to scale, which shows that its total distance is approximately 2,625 feet. The east end thereof intersects with a north and south thoroughfare described as the Cooter County Road. From its intersection with the latter, Racetrack Road proceeds westwardly along the north boundary line of defendant Lawrence's property and the south boundary line of defendant German's property. It crosses a bayou and terminates at another north and south road, and approximately 50 feet south of the entrance to plaintiffs' property, which is immediately west of and adjacent to the last-mentioned north and south road. Thus we have a situation involving an east and west road extending between two north and south roads. Subsequent to the placing of the obstructions on the roadway which gave rise to this litigation, the State of Missouri acquired the right of way for new U. S. Highway 61, which traverses in a northeast and southwest direction the property of defendant German and Racetrack Road near the western terminus thereof. At the time of the trial of this case in April, 1955, new U. S. Highway 61 was under construction. Other pertinent facts concerning the road and the use made thereof by plaintiffs and members of the public will be observed as points presented to us are considered.

For their first point defendants urge that it was not shown by adequate proof that Racetrack Road had been used by the public continuously for a period of 10 years, and that public money or labor had been expended thereon for such period. The defendants reason that in the absence of such proof there can be no basis for holding that the way in question is a public road within the meaning of the statute. Conversely, plaintiffs contend the proof established the existence of both elements. In construing Section 228.190 RSMo 1949, V.A.M.S., the courts of this jurisdiction have consistently held that there must be proof, not only of continuous use for at least 10 years, but expenditure of public money or labor thereon for the same period of time. Sellers v. Swehla, Mo.App., 253 S.W.2d 847, reversed and remanded for another reason, 364 Mo. 285, 261 S.W.2d 26; State ex rel. McIntosh v. Haworth, Mo.App., 124 S.W.2d 653; George v. Crosno, Mo.App., 254 S.W.2d 30. Although public money or labor need not be *constantly* expended, expenditure of one or the other must have been commenced and continued from time to time for the period of limitation to the end that the road is kept in substantial repair and condition for public use and travel. State v. Kitchen, 205 Mo.App. 31, 216 S.W. 981; Sellers v. Swehla, supra, Mo.App., 253 S.W.2d 847, loc. cit. 851.

A painstaking consideration and analysis of the voluminous record reveals that while there was ample and substantial proof, as we shall later demonstrate, that the road was used by plaintiffs and their father, from whom they acquired title, and by the public, generally and continuously, for a period greatly in excess of 10 years, the evidence to establish the other essential element required by the statute is far from convincing. One witness testified he saw what appeared to be the county grader used on one occasion; another stated he had not seen any one dragging the road since 1929 or 1930; a former employee of the father of plaintiffs testified that at one time (the year not specified) four Negroes who were employed by Mr. Jenkins worked out their poll tax on the road; another witness testified that in 1932 he performed work upon the road for Scrap Chisim, the then road overseer. This same witness stated that in 1948 or 1949 he saw a road grader used "on it", but was unable to state the name of the person who was operating the machine. Eugenia Jenkins, one of the plaintiffs, related circumstances indicating that in 1932, maintenance work was done by Scrap Chisim. Her two brothers, also plaintiffs herein, testified they saw the road being maintained in 1947, 1948, and 1949. Plaintiffs' evidence to establish expenditure of public funds or labor is insufficient in two respects. The labor performed was lacking in continuity, was too intermittent and entirely spasmodic. Proof that the road was repaired in 1929, in 1931, and 1932, and then again in 1947, 1948, and 1949, does not establish that labor or funds were used for a period of 10 consecutive years. Neither does the evidence disclose the work and labor performed was paid for by public funds. In fact, the defendants produced testimony much more conclusive, establishing that Pemiscot County furnished no funds or labor at any time. The county clerk and two former county judges testified to that effect, as did Clarence Funderbuck, who at one time was supervisor of all county roads. Another witness for defendants testified that in 1939 or 1940 he caused gravel to be placed on the road, not at the expense of the county but at the request of Mrs. Brooks, former owner of the property owned by defendant Lawrence. Since the proof does not bear out and sustain the contention that the road was maintained by public money or labor for a period of 10 consecutive years, it is not a county road "legally established" in accordance with the statute.

■■ For another point defendants contend the evidence was insufficient to sustain the decree on the theory that plaintiffs have an easement by prescription in the roadway in question. It is said that the plaintiffs did not sustain the burden of showing that a particular "road route" was used by plaintiffs for a particular ten-year period; and that in any event the use was not adverse.

In Roberts v. Quisenberry, 362 Mo. 404, 242 S.W.2d 26, 28, the Supreme Court made this pronouncement: " 'The four essential facts for the plaintiffs to prove in order to sustain their claim to an easement by prescription are, first, user for the prescribed period; second, that the user was adverse; third, that it was under a claim of right; fourth, notice to the owner of the user, and of its character and of the claims of right.' Anthony v. Kennard Building Co., 188 Mo. 704, 87 S.W. 921, 924; See also Faulkner v. Hook, 300 Mo. 135, 254 S.W. 48; 17 Am.Jur. 969, Sec. 56; 28 C.J.S., Easements, § 18, page 662." This rule was followed in Robbins v. Anderson, supra. It has also been said that the method by which a prescriptive easement may be acquired is substantially the same in quality and characteristics as that necessary to acquire title to real estate by adverse possession. Bridle Trail Association v. O'Shanick, supra; Burnett v. Sladek, supra; Gibson v. Sharp, Mo.App., 277 S.W.2d 672, 678; George v. Crosno, supra. We have the opinion that plaintiffs have proved each essential element necessary to establish a prescriptive easement in the

road by clear and positive evidence, which burden they were required to carry. Robbins v. Anderson, supra; Bridle Trail Association v. O'Shanick, supra; Burnett v. Sladek, supra.

A review of the testimony of each of the 18 persons who testified with respect to use made of road is unnecessary and would serve only to unduly lengthen this opinion. While there was disagreement among the witnesses relating to certain aspects of the subject, such as to the period of existence of the road, the fact that its location was changed where the bayou had crossed, and the inaccessibility thereof at times because of high water in the bayou, there was no contrariety of testimony respecting the vital and basic issue of continuous user. Typical testimony came from two of the defendants' witnesses. One, 77 years old, stated that he had lived in the neighborhood since 1893, and was familiar with the road since 1903, from which time he observed the road was used by "various people". The other, 74 years old, stated he was familiar with Racetrack Road "ever since it was put there", which was "between sixty-five and seventy years", and that he had seen it used to some extent.

The precise and vital question being whether plaintiffs acquired and have the right to use the road because of a prescriptive easement therein, we have carefully examined their testimony. Eugenia Jenkins, age 43, stated that when she was 4 or 5 years old she rode with her father in a buggy over the road. Thirty-nine years prior to the trial her father purchased a farm which is nearly due south of the Jenkins' home place, and was sometimes referred to as the Cooter farm. During the farming season the Jenkins family made as many as eight trips a day over the Racetrack Road in going to and from the Cooter farm. In 1934 and 1935, Eugenia taught school at Cooter, Missouri, and traveled the road twice every day. She further stated that her use of the road

continued until the day before it was closed by defendants. Willie Jenkins, age 30, and Kenneth Jenkins, age 28, remembered the road all of their lives, and testified that it was used continuously by their family until they were ordered to discontinue such use, which occurred in 1950.

Defendants made no serious attempt in the trial court to disprove long and continuous use of the road. Their position was and is that because the course thereof was changed on occasions, plaintiffs' use could not ripen into a prescriptive easement. In this connection it is observed that from the beginning the road proceeded down one side of the bayou, then crossed it and continued on the other side thereof. A part of the route is over the property owned by defendant German, and the remainder over the property owned by defendant Lawrence. It is reasonably clear that not only was it impossible when the water reached a certain depth in the bayou for vehicles, particularly automobiles, to cross the bayou, but that the place of crossing thereof was in fact changed as many as five times. This circumstance does not destroy plaintiffs' claim because it is apparent that the deviations were confined to a small segment of the road, that is, where it crosses the bayou, and that the greater portion thereof remained at a fixed location. Immaterial and slight deviations in the course of the roadway do not operate to defeat the right to use it. Faulkner v. Hook, 300 Mo. 135, 254 S.W. 48. Moreover, there was substantial evidence which established that for a period of at least 15 years preceding the closing of the road there had been no change made in the course thereof. We therefore rule this point against the defendants.

■ Defendants assert the proof showed that plaintiffs' use of the road was permissive throughout, and cite us to the principle that, "Mere use of a passage over another's land for a long time with his knowledge is not necessarily an adverse use." Miller v. Berry, Mo.App., 270 S.W.

2d 666, loc. cit. 668. The difficulty and weakness of defendants' argument is that there are no facts to indicate that the use was permissive in its inception so as to permit application of the doctrine that "such permissive character, being stamped on the use at the outset, will continue of the same nature, and no adverse user can arise until a distinct and positive assertion of a right hostile to the owner, and brought home to him, can transform a subordinate and friendly holding into one of an opposite nature". Pitzman v. Boyce, 111 Mo. 387, loc. cit. 392, 19 S.W. 1104, loc. cit. 1105. See, also, Miller v. Berry, supra, 270 S.W.2d 666, loc. cit. 668. Neither does the evidence disclose that during the long period of user the defendants or their predecessors in title attempted to interfere with plaintiffs in traveling over and upon the road. Indeed, there are facts to show that in 1940, defendant J. B. German recognized that plaintiffs possessed more than a permissive right to traverse the road. In that year a tree was felled across the road, making passage thereover impossible. German testified that when threatened with a lawsuit by the plaintiffs, the tree was removed. Also significant was the action of Pemiscot County in placing a culvert, some time between 1945 and 1949, across the entrance to Racetrack Road where it intersects with Cooter County Road. This improvement, made without objection by defendants, was designed to make the entrance to the road more accessible. Since the plaintiffs showed an open, continuous, positive, and uninterrupted use of the road in question for a period of more than 10 years, the burden was cast upon the defendants to show that the use was permissive rather than adverse. Fassold v. Schamburg, 350 Mo. 464, 166 S.W.2d 571; Smith v. Santarelli, Mo.App., 207 S.W.2d 543; Meyer v. Everett, Mo.App.; 235 S.W. 2d 130. This the defendants failed to do.

■ Defendants' final point is that even though plaintiffs acquired and have a prescriptive easement, it would be inequitable to enforce such right under the existing circumstances. Zinser v. Lucks, 361 Mo. 671, 235 S.W.2d 844, 848, cited as authority for this proposition, announces the rule that "the presumption of a grant from the user of a way may be rebutted, and may be overcome by facts and circumstances showing that it would be inequitable and unjust to enforce it". Defendants predicate their contention on the showing that the route to plaintiffs' Cooter farm that will be available to them over new U. S. Highway 61 when completed, will be shorter by approximately 4/10 of a mile, and therefore more convenient than the route over Racetrack and Cooter County Roads. Assuming this to be true, and recognizing that the tendency is to restrict the right of one to acquire a prescriptive easement over the land of another, Zinser v. Lucks, supra; Miller v. Berry, supra, nevertheless we find no basis for obliterating the prescriptive right already vested merely because plaintiffs have another way available to them. We are not dealing with the right to use an easement of necessity.

■ The suggestion is also made that this action was motivated by "spite" on the part of plaintiffs. Defendants point to certain testimony indicating that plaintiffs threatened bodily harm to certain members of the family of one of the defendants, and damage to the same defendant's property. Whether or not spite, if shown to exist, would be sufficient to defeat plaintiffs' enjoyment of the easement need not be determined. A sufficient answer to the contention is that plaintiffs categorically denied making threats of any kind or nature. In this situation we defer to the chancellor, who heard and saw the witnesses and observed their demeanor, and was in a better position than we are to judge their credibility. While we are required to and have reviewed the case upon both the law and the evidence, and have arrived at our own conclusion, we are also compelled to take into account the trial chancellor's position to judge credibility and characteristics of witnesses. Section 510.310, subd. 4 RSMo 1949, V.A.M.S.; Peine v. Sater, Mo.Sup.,

289 S.W.2d 101; Nixon v. Franklin, Mo. Sup., 289 S.W.2d 82.

It is clear that the result reached by the trial court was correct, and therefore the judgment must be affirmed. It is so ordered.

ANDERSON, P. J., and GEORGE P. ADAMS, Special Judge, concur.