DRAINAGE DISTRICT NO. 48 of DUNK-
LIN COUNTY, Missouri, Drainage District
No. 25 of Dunklin County, Missouri, and
St. Francis Drainage District of Clay and
Greene Counties, Arkansas (Plaintiffs),
Appellants,

v.

Truman (Pete) SMALL, Pauline Small, Ross
Small and Ora Lee Small (Defendants),
Respondents.

No. 7614.

Springfield Court of Appeals.

Missouri.

Jan. 24, 1958.

**30**

Ford & Ford, Jones & Jones, Kennett, for Drainage Dists. Nos. 25 and 48 of Dunklin County, Mo.

Kirsch, Cathey & Brown, Paragould, Ark., for St. Francis Drainage Dist. in Clay & Greene Counties, Ark.

Merrill Spitler, New Madrid, Web A. Welker, Portageville, for respondent.

McDOWELL, Judge.

Plaintiffs, Drainage Districts, appeal from an adverse judgment rendered in the Circuit Court of Dunklin County, Missouri, in their action to abate a nuisance and for injunctive relief.

The amended petition alleges inter alia: That St. Francis River, a navigable stream and tributary to the Mississippi River, forms a boundary line between Dunklin County, Missouri, on the east and Greene and Clay Counties, Arkansas, on the west.

That in the year 1911 Drainage District No. 25 was organized in Dunklin County, as a County Court District, containing within the boundary lines thereof, lands situate in said county which were assessed for benefits and that damages were allowed to other lands for the construction of levees, ditches and improvements contemplated in the organization of said district.

That Drainage District No. 25 constructed a levee east of St. Francis River, together with a ditch immediately east thereof and did condemn, appropriate and take title to a strip of land 242 feet in width for the construction of said levee and ditch, and, in addition thereto, condemned an easement for rights of flowage to pass the waters of the St. Francis River between the right-of-way line so condemned on the west to the St. Francis River, which included the lands claimed by the defendants in this action.

That the flowage area for said St. Francis River and the use of defendants' lands for such flowage rights by Drainage District No. 25 has been actual, adverse, continuous, notorious and in peaceable possession of said district from the date of the erection of said levee to the date of filing of plaintiffs' petition herein; that defendants have dispossessed plaintiffs from the right of easement in and to said lands and destroyed the area for the purpose for which the easement was condemned and appropriated by Drainage District No. 25.

It alleges that the area claimed by defendants over which plaintiffs have condemned an easement, constitutes 1,000.06 acres lying between the levee constructed by Drainage District No. 25 and the St. Francis River.

The petition alleges that Drainage District No. 48 was organized by the County Court of Dunklin County, Missouri, November 5, 1951, and that St. Francis Drainage District was organized under the

laws of Arkansas in Clay and Greene Counties as a drainage and levee district in 1905; that St. Francis Drainage District, since its organization has provided certain levees and ditches west of the St. Francis River from the date of its organization to the filing of the petition herein; that since the erection of the levee in Drainage District No. 25, in which flowage easements were condemned over the lands claimed by defendants, said lands of the defendants and the easements so condemned have been used by St. Francis Drainage District and Drainage Districts Nos. 25 and 48 as a flowage area for the passage of the waters of the St. Francis River between the levee erected by Drainage District No. 25 east of said river and the levee erected by the St. Francis Drainage District west thereof.

It alleges that the levees constructed by Drainage District No. 25 and by the St. Francis Drainage District began several miles north of the lands of defendants in issue and that the drainage of the area north of defendants' lands is to the south and west and that St. Francis River flows south and southwest between the two levees over and across the lands described and claimed by defendants.

That after the construction of the levees by Drainage District No. 25 and the St. Francis Drainage District, there were constructed levees, ditches and improvements by Mingo Drainage District of Stoddard County and Inter-River Drainage District of Butler County, which resulted in passing more water between the drainage levee of Districts No. 25 and St. Francis Drainage District and caused said waters to pass at a faster rate over the lands claimed by the defendants; that by reason of this increased amount of water and the increased speed of the flow thereof, beginning in the year 1927 frequent breaks occurred in the levees of Drainage District No. 25 and St. Francis Drainage District resulting in the overflow of the protected lands in such districts, which overflow resulted in the passage of Acts of Congress to assist the landowners within the boundaries of Drainage District No. 25 and St. Francis Drainage District in the protection of their lands from overflow of said river. It alleges that Congress adopted a project for flood control of all tributaries of the Mississippi River subject to floods, which included the St. Francis River; that pursuant to such acts a plan of flood control of the St. Francis River was authorized; that pursuant to this plan it was recommended that new levees and change of location in existing levees be constructed by Drainage District No. 25 and the St. Francis Drainage District.

Under the plan plaintiffs were required to furnish satisfactory assurances that the districts would acquire easements for the construction of the improvements under such plan without cost to the United States. That Drainage District No. 25 and St. Francis Drainage District complied with the Act of Congress and gave assurance they would furnish all lands and easements necessary for the construction of the levees and drainage districts recommended by the flood control project; that the Government agreed to improve or participate in the plan for control of floods of the St. Francis River. This Congressional Act was passed June 22, 1936, and amended July 26, 1947, 33 U.S.C.A. § 701a et seq.

That in order to comply with this project proposed by the Government, it was necessary to incorporate Drainage District No. 48, which embraced substantially the same lands as contained within the boundaries of Drainage District No. 25. Drainage District No. 48 was organized by the County Court of Dunklin County and appropriated all the rights-of-way and easements vested in Drainage District No. 25, which included easements over the lands in issue claimed by defendants.

Drainage District No. 48 obtained additional lands for flowage east of the levee erected by Drainage District No. 25. The additional flowage area between the levee of Drainage District No. 25 and the new

levee of Drainage District No. 48 to the east, contained 282.50 acres, which land was condemned and paid for and contained some of the lands owned by the defendants. Defendants were made parties to this condemnation suit, a judgment for damages was entered and the title to their lands was acquired in fee simple for the right-of-way so condemned. Dunklin County was made a party to this action.

It is alleged that all the lands referred to and claimed by the defendants are unimproved, wild, swamp and overflow lands, lying in the spreads of the St. Francis River; that defendants are claiming some title to the 1,000.06 acres of land (described) and that whatever interest they have is subject to the easement for flowage purposes as alleged in the petition.

It alleges that the construction of the private levee around the lands (described), as claimed by the defendants, has impounded the waters of the St. Francis River north of the private levee of the defendants, and destroyed the rights of flowage of said waters and endangered and impaired the efficiency and adequacy of the levees and ditches constructed by the plaintiffs lying north of said private levee and that said private levee has so impounded the waters of said river north thereof and has rendered inadequate, inefficient and useless such newly acquired flowage area, and endangered and rendered likely to break and crevasse the levee of Drainage District No. 48 north of the private levee; that beginning in the year 1955 and completed in 1956, defendants have unlawfully, willfully, and without right of any kind and against the will of plaintiffs constructed a private levee consisting of wide and strong earth embankment by the use of a drag line which destroys the use of the lands (described in plaintiffs' petition) as claimed by the defendants and over which plaintiffs contend they have an easement for flowage rights and that the flow of said river has been stopped and impeded and the use of said lands for flowage rights have been denied; that by such unlawful acts in erecting said private levee, plaintiffs have been divested of their easement for flowage purposes over lands consisting of approximately 1,282.56 acres; that by reason of said private levee the flowage area between the St. Francis Drainage District and Drainage District No. 48 has been reduced to 576.06 acres; that defendants with their private levee have crossed over lands, the title to which is vested in fee simple in Drainage Districts Nos. 25 and 48, have filled up and stopped the drainage and flow of water in the ditch of Drainage District No. 25, and have built their levees upon the lands in which Drainage District No. 48 has acquired a vested easement for flowage purposes.

Plaintiffs pray that the defendants, their agents, servants and employees, successors or assigns, be ordered to abate and discontinue the nuisance consisting of the erection of a private levee and that they be perpetually enjoined and restrained from the maintenance of the private levee referred to; that they be ordered and required to remove the obstruction as embraced in the levees and restore to plaintiffs their rights of easement for flowage purposes to the lands described in the complaint and the unrestricted right to enjoy the easement, titles, estates and interest in the lands described.

Defendants' first amended answer admits that the St. Francis River is one of the tributaries of the Mississippi River, and is a navigable stream; that it constitutes the boundary line between Dunklin County, Missouri, east of the river, and Clay and Greene Counties, Arkansas, west of the river, and denies all of the other allegations of the petition contained.

There is little dispute as to the facts in the case. The St. Francis River, flowing in a southerly direction, forms the boundary line between Dunklin County, Missouri, on the east, and Clay and Greene Counties, Arkansas, on the west. It is a tributary to the Mississippi River and navigable.

Prior to the organization of plaintiffs, Drainage Districts, all the lands composing

such districts and the lands owned or claimed by defendants were swamp and overflow lands in the St. Francis River basin.

It is stipulated and agreed that plaintiffs are legally constituted drainage and levee districts in Missouri and Arkansas; that the defendants have no right to maintain that portion of defendants' levee where such levee was constructed across the west right-of-way line of Drainage District No. 25 and on east to where the private levee of defendants joins on to the new levee of Drainage District No. 48.

That defendants own and are in possession of lands west of Drainage District No. 25 right-of-way except lands in Sec. 32, Twp. 18, R. 8, which are now enclosed within levee constructed by defendants subject to the easements and flowage rights, if any, owned by plaintiffs.

That the only issue for determination by the court relative to the above entitled land is, Have plaintiffs acquired flowage rights or easements over the lands in question of the defendants? And if the court determines that such rights have vested in plaintiffs, then the question for the court to further determine is the right of defendants to construct and maintain their private levee.

That the levee of St. Francis Drainage District has been maintained since the date of construction; that Drainage District No. 25 of Dunklin County was completed in 1914 and maintained since that date as a levee and no county patents to lands of the defendants were issued prior to the construction of said Arkansas and Missouri levees.

It is stipulated that Drainage District No. 48 was organized by the County Court of Dunklin County, August 2, 1950, to comply with the recommended Flood Control Project of the Government for St. Francis River. Final judgment, establishing the district, was entered November 5, 1951, and embraces substantially the same lands with-

in the boundaries of Drainage District No. 25. Dunklin County was made a party to this action. The improvements contemplated by this District included acquisition of additional rights-of-way for construction of a new levee and drainage ditch, east of the levee erected by Drainage District No. 25. The additional flowage rights provided comprised 282.50 acres between levees of Drainage Districts Nos. 25 and 48.

The following is a substantial reproduction of a map introduced as plaintiffs' exhibit No. 5. It is not in color, as shown on the original exhibit. The large shaded area, lying between the St. Francis River on the west and the line designated (levee of District No. 25) on the east, was in orange color on the original exhibit and the white area, just east of the line marked (levee of District 25) of the shaded area and the black line east of said white area marked (levee No. 48) is shown in green, and contains 282.50 acres, which is the additional flowage area added by the erection of the new levee in District No. 48, and just east of the new levee is shown the Diversion Channel in District No. 48, which, on the original exhibit was marked in blue. The black line in the northeast corner of the exhibit, (from (A) to (B) is a "tie-in" levee across the new flowage rights between the two drainage levees temporarily built by the drainage districts to keep the waters out of the new floodway until the new levee in District No. 48 could be completed.

There is a "Meander line" shown in the northeast corner thereof by a black line which runs southeasterly, thence southwesterly, thence southeasterly, thence northeasterly to the white flowage area between the two districts, thence approximately easterly, etc. Only that part of the shaded area west of the levee of Drainage District No. 25 (shown by cross-crossed lines) was contained in the original government survey in 1848. The balance of the shaded area shows lands claimed by the defendants, which were not surveyed by the United States until 1928. The heavy black line around the shaded area, which encloses

the lands claimed by defendants and which extends over the added flowage area on the south created by the levee in District No. 48 and on the north extends to and connects with the "Spur" levee on lands which have been condemned by the drainage districts, represents the private levee erected by defendants and complained of by the plaintiffs in this action.

This exhibit also shows the channel of the St. Francis River and just west thereof the levee erected by the St. Francis Drainage District in Arkansas.

At the time of the filing of the petition and of the dates of the decree of the County Court organizing Drainage District No. 25, defendants' lands were owned by the United States Government with equity in Dunklin County, and, were not surveyed. The defendants' lands were not described or included within the boundary line of Drainage District No. 25. The decree of the County Court establishing Drainage District No. 25 reads:

"We have condemned for the right-of-way for said main levee and ditch a space of 150 feet on the east side of the survey line and 90 feet on the west side of the survey line and in determining the benefits and damages we did take into consideration the value of the property so appropriated, as well as all property between said levee and the channel of the St. Francis River and have also taken into consideration all property prejudicially affected by the improvement."

The court's judgment recited that the right-of-way for the levee and ditch was condemned for the purpose of constructing and maintaining the improvements and that the district would have full rights to enter the premises for that purpose. Attorney for plaintiffs stated: "* * * I did check it on the question of whether there were any benefits or damages assessed for land west of the levee right-of-way and I would be willing to admit there were no damages or benefits assessed * * *"

It is admitted that the Government, by Act of Congress, conveyed the overflow lands, claimed by the defendants, to Dunklin County and that the County conveyed the same to purchasers, through which defendants claim, without any reservation as to easements or drainage and levee rights-of-way.

Plaintiffs offered in evidence exhibits 2 and 3. Exhibit 2 was a warranty deed dated February 1, 1944, from Armor A. George and Bertha M. George to John P. Voss and wife, conveying lands described and claimed by the defendants, as a tract of land lying south and east of the St. Francis River and north and west of Drainage District No. 25, according to a plat of survey made by government engineers April 7, 1930. The deed contains this exception:

"The land above conveyed subject to all easements for drainage and levee improvements, and rights-of-way and also to any and all taxes of whatever nature or kind now due or hereafter to become due."

Exhibit No. 3 is a warranty deed dated July 3, 1944, from John P. Voss and wife to Pete Small and Ross Small, conveying 843.80 acres of land purchased from Armor George and E. A. Reissaus, September 25, 1919. This deed contains the same exceptions as to easements for drainage and levee improvements as the deed described in exhibit 2.

We think it unnecessary to state the facts concerning the damage to plaintiffs, Drainage Districts, caused by the erection of a private levee around defendants' lands. There is no contention made by the defendants that this private levee does not interfere with the workability and adequacy of the drainage districts and that such levee does not constitute a menace and danger to the areas in such districts protected by the improvements thereof. We think the evidence fully supports the allegations in plaintiffs' petition that the area of the floodway of the St. Francis River has been greatly narrowed and lessened by the erection of the private levee; the waters north of said private levee have been impounded, which endangers the levees protecting the lands within the boundaries of such drainage districts.

The evidence establishes that defendants' lands, which have been enclosed by the private levee, have not only been a part of the floodway of the St. Francis River for forty years, as testified to by plaintiffs' witnesses, but it has been a part of such floodway always, just as had been the lands contained in plaintiffs, Drainage Districts, prior to the improvements. The purpose

of the levees erected by plaintiffs was to reclaim the lands within the boundaries of said districts from overflow waters.

There is some evidence that a part of the channel of the river passed over defendants' lands but we think plaintiffs' evidence wholly fails to meet the burden required in equity to prove this fact. We think that the record evidence is that defendants' lands in issue are just wet, swampy, overflow lands and not contained within the channel of the river.

The trial court, in its judgment, found that plaintiffs acquired no right, title or interest by way of easement, by condemnation, prescription or otherwise in the lands of the defendants in issue. It further found that defendants had no right to erect or construct any dam, levee or barricade east of the west right-of-way line of the 242 foot strip of land condemned by Drainage District No. 25 for the erection of a levee and drainage ditch and that plaintiffs are entitled to have any dam, levee or barricade erected by the defendants east of the west line of said levee of Drainage District No. 25 removed and leveled at the expense of the defendants and decreed that defendants shall remove or level all such dams, levees and barricades by them erected east of said right-of-way of said 242 foot strip of land and that said defendants be forever enjoined from the erecting and maintaining such dams, levees or barricades and adjudged the costs of the proceedings against the defendants.

In our opinion we will refer to appellants as plaintiffs and to respondents as defendants.

It is stipulated by the parties that the only issue for determination on appeal is, "Have plaintiffs acquired flowage rights or easements over the lands in question of defendants? And if the Court determines that such rights have vested in plaintiffs, then the question for the Court to further determine is the right of defendants to construct and maintain the private levee of defendants."

We agree with plaintiffs' first contention that at the date of the organization of Drainage District No. 25 and the date of completion of the contemplated improvements in such district, the legal title to the defendants' lands was in the United States and equitable title in Dunklin County; that at such time the lands of the defendants were not surveyed. National Cypress Pole & Piling Co. v. Hemphill Lumber Co., 325 Mo. 807, 31 S.W.2d 1059, 1061.

■ Plaintiffs assert that the statutory notice to the interested parties, given in the proceedings of the organization of Drainage District No. 25, was sufficient to include Dunklin County because of the general recital contained in the notice, to-wit: "To all other persons interested".

To support this contention plaintiffs cite Troeger v. Roberts, 284 Mo. 363, 223 S.W. 796, 797; State ex rel. Marshall v. Bugg, 224 Mo. 537, 556, 563, 123 S.W. 827 (decided in 1909) and State ex rel. Applegate v. Taylor, 224 Mo. 393, 475, 476, 488, 490, 491, 123 S.W. 892.

In Troeger v. Roberts, supra, plaintiff-landowner sought to enjoin the contractor from going upon the condemned right-of-way over her land for the construction of a ditch. Her contention was that her lands were not properly condemned because the County Court never acquired jurisdiction over the person of plaintiff in that her name was not mentioned in the notice published by the County Court as provided by § 5587 RSMo 1909.

The notice read: "And to all other persons who may own such land hereinafter described or any part thereof or any interest therein and affected by said petition and proceedings, whether specifically named herein or not." [284 Mo. 363, 223 S.W. 797.]

Plaintiff's husband was named in the notice but plaintiff was not. The court held the notice sufficient to bind plaintiff though her name was not specifically contained

therein and that the county court acquired jurisdiction over her person. On page 797 of 223 S.W. the court stated the law:

"The notice issued to landowners on July 3, 1911, by the county clerk of Platte county was directed to some of the plaintiffs in this action, and generally to all other persons owning lands to be affected by the proposed drainage ditch. That notice complied with section 5587, Revised Statutes 1909, and was *sufficient to give the court jurisdiction over each and every person owning lands within the drainage district,* and the appellants, who were then part owners of the D. W. Hutson lands, were accorded every opportunity required by law to appear in the county court and resist the judgment condemning the right of way for the proposed ditch." (Emphasis ours.)

We think the law is properly declared in this authority cited by plaintiffs and does not support plaintiffs' contention. The notice applies to all persons owning lands to be affected by the proposed district and the court specifically states in its opinion, as underlined by us, that it applies to each and every person owning lands within the drainage district. In the instant case the lands claimed by the defendants, which are in issue, were not located within the drainage district or within the strip of land 242 feet wide condemned for the purpose of erecting the improvements, to-wit, the levee and drainage ditch to the east thereof. Defendants' lands were not even surveyed at that time and the legal title thereto was in the Government and the equity in Dunklin County.

State ex rel. Marshall v. Bugg, supra, was decided under section 8287 of the Laws of Missouri 1905, which is the same law as in § 5587 RSMo 1909, under which Troeger v. Roberts, supra, was decided. It will be noted in the Bugg case, at the pages referred to in plaintiffs' brief, that the court states "after due notice given to all persons who were in any way interested in such proceedings". [224 Mo. 537, 123 S.W. 835.]

State ex rel. Applegate v. Taylor, supra, 224 Mo. on page 475, 123 S.W. on page 916, of its opinion, stated: "* * * The report in that and in this class of cases constitutes important links in the proceedings, but neither controls the action or decision of the court, for the reason that sections 8286 and 8287, in express terms, upon the incoming of the report, make it the duty of the court to notify all parties interested that the report has been filed, and that they will be given a hearing upon a day stated, * * *. If the report does not accord to the court's judgment as to what is right and just in the premises, then, under the authority of section 8287, the court may reject the report and change the location and dimension of the ditch so as to conform to the judgment of the court. By reading the sections mentioned, it will readily appear that the report of the viewers is absolutely subject to the control of the court, and not the court subject to the report." This case is in accord with the holdings of the cases above discussed.

We conclude from the evidence in the instant case that the County Court, if a necessary party, was not included within the notice required by the statute to interested parties owning lands within the proposed district.

The records of the County Court, pertaining to the organization of Drainage District No. 25, were offered in evidence, to-wit: The petition, by interested parties in the proposed district, the appointment and report of commissioners and the final judgment. Lands of defendants west of the levee right-of-way so condemned were not included.

█ Plaintiffs rely upon the final order of the county court establishing Drainage District No. 25, which reads as follows:

"We have condemned for the right-of-way for said main levee and ditch a space of 150 feet on the east side of the survey line and 90 feet on the west side of the

survey line and in determining the benefits and damages we did take into consideration the value of the property so appropriated, as well as all property between said levee and the channel of the St. Francis River and have also taken into consideration all property prejudicially affected by the improvement.

"The right-of-way for said ditch and levee embankment is condemned only for the purpose of constructing and maintaining said improvement and said district shall have at all times full right to enter upon said premises for the purpose of constructing and maintaining said levee."

The record does not disclose that the County Court was a party to this proceeding and we think the notice was insufficient to make it a party as contended under this assignment of plaintiffs.

We do not question the power of the County Court, under the statute, to do what is right and just in the premises and that it might have rejected the report of the commissioners and changed the location and the dimensions of the ditch or levee so as to conform to the judgment of the court. But the record shows that the court made no such changes. The judgment of the court, referring to lands west of Drainage District No. 25 and to the consideration of any damages to such lands does not establish, in any way, an easement over said lands.

We further find that the legal title to the lands claimed by the defendants, at the time of the final order made by the County Court establishing Drainage District No. 25, was in the United States and we agree with defendants' contention that if an easement was to be established over these lands, the United States would be a necessary party. There is no pretense in the case that it was made a party.

It was held in United States v. State of Alabama, 313 U.S. 274, 61 S.Ct. 1011, 1014, 85 L.Ed. 1327, that "The proceedings in the county court for the sale of the lands were taken and the decrees were rendered after the United States had become the owner of the tracts. A proceeding against property in which the United States has an interest is a suit against the United States. * * * The United States was an indispensable party to proceedings for the sale of the lands, and in the absence of its consent to the prosecution of such proceedings, the county court was without jurisdiction and its decrees, the tax sales and the certificates of purchase issued to the State were void."

In the instant case the United States was not made a party and could not have been made a party without its consent.

Plaintiffs, under assignment II (b) state that the judgment of the County Court cannot be collaterally attacked, citing Troeger v. Roberts, 284 Mo. 363, 223 S.W. 796, 797, and Drainage Dist. No. 1 Reformed, of Stoddard Co. v. Matthews, 361 Mo. 286, 234 S.W.2d 567.

We think it unnecessary to discuss this issue for, under the facts in the case, there is no attack made against the judgment of the County Court. That judgment is legal and valid, but it just does not have any reference to an easement over the lands of defendants, in issue.

It is contended by plaintiffs that their exhibits numbered 2 and 3, which are warranty deeds to the defendants' lands in question, specifically conveyed such lands (subject to all drainage ditch rights-of-way and easements); that defendants are estopped to deny the easement vested in Drainage District No. 25 since they admit that their right to such lands is by virtue of title obtained under these deeds.

To sustain this contention plaintiffs cite 31 C.J.S. Estoppel §§ 10, 37, 38, pp. 195, 196, 213, 216, 218.

In 31 C.J.S. Estoppel § 38, subd. 3, p. 216, it is stated:

"As a general rule, a grantee is estopped to deny the validity of any outstanding interest, to which his deed recites that the conveyance to him is subject. Thus where the deed so recites, the grantee is estopped to deny the validity of an easement, lease, or lien.

"However, the acceptance of a deed, which merely recites that it is subject to any rights which may have been acquired by a third person does not admit that any rights have been acquired by such person."

Under this law grantees in the instant case do not admit that any rights have been acquired by Drainage District No. 25.

■■■ We find that parties to a deed and those claiming through him are bound by the recital, in it legitimately appearing to its subject matter. Estoppel is limited by the intention of the parties and whether one party or the other or both are estopped by a recital depends on their intent as manifested by the deed. We hold that there were no easements over the lands conveyed to the defendants in fact. We think it was the intention of the grantors to protect themselves against any possible liability and that the acceptance of the deed by the defendants conveying the lands in issue was not an admission of any rights acquired by plaintiffs.

Under plaintiffs' assignment No. IV, they assert they have acquired an easement over the lands of the defendants for flowage purposes by prescription. They state that the uncontradicted evidence shows adverse use for more than forty years.

Jenkins v. German, Mo.App., 298 S.W.2d 486, 488, 489, is cited. This action was to enjoin the obstruction of a road easement. It was contended that the use claimed was in excess of the period of limitation; that under the claim of right in defiance of defendant's title, the use had been open, continuous, adverse and hostile to defendants and their predecessors in title. On page 489 of the opinion the court makes this statement:

■■■ "In Roberts v. Quisenberry, 362 Mo. 404, 242 S.W.2d 26, 28, the Supreme Court made this pronouncement: ' "The four essential facts for the plaintiffs to prove in order to sustain their claim to an easement by prescription are, first, user for the prescribed period; second, that the user was adverse; third, that it was under a claim of right; fourth, notice to the owner of the user, and of its character and of the claims of right." Anthony v. Kennard Building Co., 188 Mo. 704, 87 S.W. 921, 924; See also Faulkner v. Hook, 300 Mo. 135, 254 S.W. 48; 17 Am.Jur. 969, Sec. 56; 28 C.J.S. Easements § 18, page 662.' This rule was followed in Robbins v. Anderson, supra [Mo.App., 274 S.W.2d 809]. It has also been said that the method by which a prescriptive easement may be acquired is substantially the same in quality and characteristics as that necessary to acquire title to real estate by adverse possession. Bridle Trail Association v. O'Shanick, supra [Mo.App., 290 S.W.2d 401]; Burnett v. Sladek, supra [Mo.App., 251 S.W.2d 397]; Gibson v. Sharp, Mo.App., 277 S.W.2d 672, 678; George v. Crosno, supra [Mo.App., 254 S.W.2d 30]. * * *'"

The same law as above set out concerning the establishment of an easement by prescription is declared in Robbins v. Anderson, Mo.App., 274 S.W.2d 809.

The purpose of the construction of Drainage District No. 25 and the improvements provided therefor was testified to by plaintiffs' witness, Charles C. Redman, Jr.

"Q. The primary purpose of the levee was to keep overflow water out of the drainage district, wasn't it? A. Of the levee, yes, sir.

"Q. And then this other levee over here of 48, you set back and built a new levee and called it 48, we call it 48 levee, that was for the same purpose, to keep overflow water out of your drainage system there, wasn't it, or your drainage district? A. Out of the land eastward.

"Q. Yes, it was to keep overflow water off of your lands inside of the district? A. Yes."

Many of plaintiffs' witnesses testified that the purpose of Drainage District No. 25 in erecting its levee was to prevent the overflow waters from the St. Francis River passing over the lands reclaimed in the district and that the purpose of Drainage District No. 48, which included all the lands in Drainage District No. 25, was for the protection of lands east of the levee erected by Drainage District No. 48 from increased overflow waters of the St. Francis River caused, to some extent, by improvements made by the Government north of said river.

We held in Gibson v. Sharp, supra, cited by plaintiffs under this allegation of error, 277 S.W.2d on page 677(1), as follows:

" * * * Missouri follows the 'common enemy' doctrine, and with certain exceptions not here involved a landowner may dam against surface water even though in so doing he casts it back upon his neighbor. City of Hardin v. Norborne Land Drainage Dist., 360 Mo. 1112, 232 S.W.2d 921; Goll v. Chicago & A. R. Co., 271 Mo. 655, 197 S.W. 244; 12 A.L.R.2d at page 1341. * * *"

■ Under the evidence in this case all the lands involved, including those within the boundaries of the drainage districts, plaintiffs, were swamp and overflow lands of the St. Francis River. The lands of the defendants had been overflow lands and a floodway of the St. Francis River for many years prior to the improvements made by the plaintiffs herein. The only contention that plaintiffs could make is that the flood waters after the erection of the levee in Drainage District No. 25 and, later, Drainage District No. 48, would increase the depth and speed of the overflow waters which crossed defendants' lands. The evidence is not sufficient to show any claim of right over defendants'

lands for flowage purposes. Neither is it sufficient to give notice as required to obtain an easement by user. Plaintiffs, Drainage Districts, had a legal right, under the laws of Missouri and by the common law, to organize a drainage district and to erect levees to protect their lands from surface or overflow waters. Owners of the lands of defendants would have had no right to prevent such improvements. And we think they would have had no right for damages because the overflow waters were increased as to depth or speed. Thus we find against plaintiffs and hold the evidence wholly fails to show easement by prescription.

It is unnecessary for us to discuss the numerous authorities cited by plaintiffs. They are all in accord as to what the law is.

■ Under allegation of error No. V, plaintiffs state that "Under the uncontradicted evidence in this case the surface water rule is not applicable."

Among the many citations are Schalk v. Inter-River Drainage Dist., Mo.App., 226 S.W. 277, 279. This case holds that surface waters may be warded off land and thrown on adjacent land and that waters overflowing river banks during floods are surface waters. It, likewise, holds that a natural stream cannot be dammed up nor the water from its beaten path or bed diverted to the damage of property without making compensation thereof.

Keener v. Sharp, Mo.App., 95 S.W.2d 648, 652, holds that "Surface water, from whatever source it may spring, is that water which is separated from waters of a natural body of water, such as a lake or river".

Keener v. Sharp, 341 Mo. 1192, 111 S.W.2d 118, 120, holds that " 'surface water is a common enemy which every man may ward off his land and thus throw on an adjacent or lower owner, provided he does not, in warding it off, unnecessarily collect it and discharge it to the damage

of his neighbor'". It, likewise, holds that waters overflowing a river during a flood or freshet and spreading out over bottom land is surface water which an owner can ward off his land and throw on the land of adjoining owner.

The last authority, cited by plaintiffs, was Happy v. Kenton, 362 Mo. 1156, 247 S.W.2d 698, 700. This case holds " * * * One may not obstruct a natural watercourse without liability for ensuing damages to others, but that one may otherwise treat surface waters as a common enemy and obstruct their flow without liability for ensuing damages so long as he does so reasonably and not recklessly or negligently."

We think we have gone over sufficient of the authorities cited to show that this allegation of error is without merit. It is based upon the theory that the levee erected by the defendants obstructs the natural flow of the St. Francis River. The evidence does not support this finding.

In allegation of error No. VI, plaintiffs state that defendants may not lawfully obstruct or divert the flow of water across their lands which are within the flood plane of the St. Francis River.

There is no merit to this contention and we doubt if the question is raised within the pleadings and issues stipulated by the parties.

Under the evidence the issue as to damage to defendants' lands is not an issue and we will not discuss alleged error in assignment VII.

Plaintiffs' theory is that they have an easement over the defendants' lands, either by condemnation or, if not, by prescription and we have found that under the evidence their proof fails to establish either an easement by condemnation or one by prescription.

We agree with the statement under allegation of error No. VIII, that tremendous economic interest involved must resolve all doubts, if any exist, in favor of plaintiffs but we think there is no doubt existing under the issues presented to this court for judgment.

Judgment affirmed.

STONE, P. J., and RUARK, J., concur.